Townsend, District Judge.
The complainant claims under six patents for certain improvements in incubators, but only two of these are relied on as the foundation of the prayer for a preliminary injunction. The patent No. 258,295, known as the “Halstead Patent,” was issued to Halstead on May 23, 1882, and was assigned to complainant on February 1. 1892. The claims Nos. 6 and 7, which complainant alleges are infringed by defendant, are as follows:
“(6) In an egg-holding tray, the combination, with the wires or cross bars, of a web of muslin or similar material, on which the eggs rest, and which is movable, so as to turn the eggs, substantially as set forth. (7) The combination. in an egg-holding and turning tray, of cross wires or bars, a web, and a roller, upon which the web may be wound, substantially as set forth.”
The eggs are kept in position, while turning in said tray, by wires stretched across it. The advantage of this arrangement lies in the fact that the eggs can be turned without the danger of breakage. In defendant’s incubator the eggs rest upon a cloth supported by parallel bars of wood. Said cloth revolves on rollers as in complainant’s tray, but in defendant’s tray the rollers serve both as a support for the eggs, and to hold them in place while the cloth is revolved to turn them. Complainant claims that this device for supporting and turning eggs is a mechanical equivalent of his invention, and an infringement thereof. Complainant further introduced the affidavit of Halstead, the patentee, for the purpose of showing acquiescence of the public in the validity of said patent. The material part of the affidavit is as follows:
“That applicant put the same into practical use about the time the application for patent was made; that the same has been in practical use ever since, and the rights of the owner of said letters patent in said invention have been acquiesced in by the public, and that this invention has been applied to a great many hundred machines; that he has never licensed any one to make it, and had never sold any manufacturing rights to make it, and the validity of said letters patent has never been questioned.”
The complainant also introduced in evidence an order of. the circuit court of the United States for the southern district of Illinois, dated April 4, 1892, granted in a suit brought by the complainant against A. L. Chase et al., wherein the court found the egg tray of the defendants in that case to be an infringement of complainant’s patent, and restrained and enjoined the defendants therein from further manufacture of said trays until the further order of the court; the cause being continued for further hearing to April 23, 1892. On June 9, 1892, and after the hearing in this case had' been closed, complainant, by leave of court, filed certain exhibits introduced upon the hearing in said case in Illinois, and a copy of the final decree of said court, making said temporary injunction perpetual.
The defendant introduced several patents for the purpose of showing the state of the art at the time when complainant obtained his patent, and the lack of patentable novelty therein. One of these—the Ren wick patent, No. 224,224, granted in 1880—described a tray in which the eggs rested on bars or rollers, or “on an endless apron, carried upon the supporting roller.” The eggs were turned by means of the revolving *650 rollers, with or without said apron. Another patent—the Martin patent, No. 287,689, granted in 1881—described a series of rollers supporting the eggs, which revolved upon their axes, and turned the eggs. Other patents, granted prior to that of complainant, described egg trays with grating covered with cloth, as claimed by complainant. The device of the defendant more nearly resembles the devices employed in certain of these earlier patents than those claimed in the Halstead patent. There the cross wires and wire netting are distinct, and used for entirely different purposes. The wires above the cloth, and, as the patentee describes them, “near the top of the tray,” prevent the eggs from moving along when the cloth is turned while the eggs rest upon the netting. Neither in defendant’s device nor in the Renwick patent are there any wires above the cloth, but the rollers below it serve the double purpose of supporting the cloth and of holding the eggs in place while turning. It further appeared that Halstead, in his application for a patent, claimed as his improvement an arrangement whereby the eggs rested between cross bars not supporting the eggs, and disclaimed cross rollers on which the eggs rested.
The affidavit of complainant that he applied the patent since January, 1892, and that of the patentee, quoted above, are the only evidences of public acquiescence. None of the cases cited by complainant’s counsel show that such use would be sufficient to establish the claim of public acquiescence.
A suitable adjudication of another federal court, on final hearing, upon the validity of this patent and the infringements thereof, would have great, if not controlling, weight in the determination of the same question in this court. But it does not seem to me that this is such an adjudication, for the following reasons: The restraining order or injunction originally granted was made perpetual at the final hearing but no further finding was made thereon. Although this case was reopened to permit complainant to introduce evidence as to said decree, none was offered to show that the questions as to the state of the art or public acquiescence were presented for the consideration of the court. It does not even appear that the question of patentable novelty was before the court, except as it may be inferred from the decree of the court. The decision seems to be based simply upon “the bill of complaint, the affidavits of the respective parties, and arguments of counsel.” No opinion of the court was filed with the papers.
But there is another reason why said decree is not binding in this case. An examination of the exhibits in the case in Illinois shows that the infringing device differed materially from that of the defendant, in having both the wire netting below, and the cross wires above, the cloth apron, as in complainant’s patent. For these reasons I think complainant has failed to show that the decree of the Illinois court controls this case.
The other patent against the infringement of which an injunction is asked is No. 368,249, granted in 1887, to complainant. The claim No. 3, of which defendant’s device is alleged to be an infringement, is as follows:
*651 “In an incubator, as a means of uniformly heating its interior chamber, the flat tank overlying said chamber, and provided with the two partitions extending from one end nearly to the other on opposite sides of its middle, in combination with the external heating vessel, the two pipes, a, leading from its top into opposite sides of the tank outside of the partitions, and the return pipe, a, located at the same end of the tank, and extending from a point between the partitions to the base of the heater, whereby the hot water is delivered in two currents along the sides of the tank, and returned through its middle to the heater. ”
This claim No. 8 also was held valid, and a perpetual injunction granted against defendants, by the court in the decree hereinbefore referred to in the suit in Illinois. The reasons already stated why that judgment is not conclusive herein as to the Halstead patent apply to this patent. The defendant substitutes pipes for the partitions patented by complainant. Complainant claims that said pipes are a mechanical equivalent for said partitions. But defendants showed, by the copy of the file wrapper in the matter of the above patent, that the complainant originally claimed pipes, substantially as used in defendant’s incubator, and that, the patent office having rejected such claim, complainant inserted in his application the following disclaimer:
“I am aware that heating pipes have been variously arranged to maintain a uniform temperature in an incubator; but a flat tank, with partitions, such as herein shown and described, has been found to give the result desired in a more satisfactory manner, and at less cost.”
After such acquiescence, the claim of the patentee as allowed must be construed strictly against him and in favor of the public. Mott Iron Works v. Standard Manufg Co., 59 O. G. 2067, 51 Fed. Rep. 81, and cases cited.
The defendant further showed by the patent to Cantelo, No. 5,204, granted 1847; the patent to Davis, No. 193,490, granted in 1877; the patent No. 245,121, granted in 1881; and the patent to Rosebrook, No. 349,749, granted in 1886; that both pipes and partitions had been used prior to the issuance of complainant’s patent, and for the purposes claimed by complainant.
On the other hand, complainant claims that the patents introduced by defendant are mere paper patents, which never had any practical value, while his patents are of great utility. Where the question of patentable novelty is doubtful, an extensive use by the public may resolve the doubt in favor of the patentee. Topliff v. Topliff, 59 O. G. 1257, 12 Sup. Ct. Rep. 825. On the whole, however, thé evidence presented has raised in my mind such a substantial doubt in regard to infringement in either case, that, in the absence of any evidence that complainant will be seriously injured by withholding the preliminary injunction, I do not feel justified in granting it. “A preliminary injunction ought never to be issued unless the right of a patentee is an established or admitted one, and unless the invasion of the right is proved beyond a reasonable doubt.” Pavement Co. v. City of Elizabeth, 4 Fish. Pat. Cas. 189. It does not seem to me that the questions raised can be fully and fairly disposed of on the hearing of *652 the application for a temporary injunction, and I think no injunction should issue until after a full and final hearing.
The motion for a preliminary injunction is denied.