## DUER *v.* CORBIN CABINET LOCK COMPANY.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF CONNECTICUT.

No. 191. Submitted March 28, 1893. — Decided May 1, 1893.

The invention claimed in letters patent No. 262,977, issued August 22, 1882, to Morris L. Orum for an improvement in locks for furniture, in view of the previous state of the art had no patentable novelty.

The mere fact that a patented article is popular and meets with large and increasing sales is unimportant when the alleged invention is clearly without patentable novelty·

THIS was a bill in equity for the infringement of letters patent No. 262,977, issued August 22, 1882, to Morris L. Orum, for an improvement in locks for furniture, such as are used on bureau or desk drawers, or the doors of wardrobes, washstands, &c., and as stated by the patentee in his specification :

" It has for its object to provide a lock of such shape as to adapt it for insertion in a mortise of peculiar form, whereby a pair of the securing screws or nails is dispensed with, and the case of the lock is held laterally in the mortise by reason of its conformity thereto in shape."

The following drawings illustrate the lock and mortise in which it is held.

*Fig.1.*

*Fig. 2.*

The patentee further said in his specification:

"The lock costs no more than an ordinary one of equal quality, and to attach it one tack is used, instead of four screws, as usual; but the main advantage is due to the saving of time and labor in making the mortise, and to the superiority of the finished job by reason of the fact that the lock-plate is countersunk in the wood, instead of lying upon its surface. This result has never heretofore been attained, except by hand chiselling, which is a slow and tedious process.

"I am aware that locks arranged to dovetail into their mortises are not broadly new, and such I do not claim."

His claim, and there was but a single one, was as follows:

"The lock herein described, having a dovetail cap and top plate, and a front plate projecting laterally and below the cap and rounded at the bottom, whereby the lock is adapted for insertion in a mortise formed by a laterally-cutting bit, and when in place is sustained by a countersunk front plate, as set forth."

The answer set up certain anticipating devices owned by the defendant, and the case was heard in the court below upon the pleadings and proofs, and the bill dismissed. 37 Fed. Rep. 338. Plaintiff thereupon appealed to this court.

*Mr. Benjamin Price* and *Mr. Wilmarth H. Thurston* for appellant.

*Mr. John P. Bartlett* and *Mr. Charles E. Mitchell* for appellee.

Mr. Justice Brown delivered the opinion of the court.

The old and familiar style of furniture · lock in use from time out of mind was enclosed in a shell or case, square or nearly so, and attached to a rectangular plate turned over at the top to form what is termed a selvedge, through which the bolt passed. A key-post also projected some distance beyond the back plate of the shell toward the front of the drawer. The lock so constructed was inserted in a rectangular mortise cut out to receive it, and secured to the drawer by four screws through the four corners of the broad front plate.

The peculiar shape of the cavity required the mortising to be done by hand, which took considerable time, and added largely to the expense of the furniture. Indeed, the lock itself in some instances cost less than the expense of mortising the recess to receive it. The need had been felt for a long time of a lock of such shape that it could be received into a rounded cavity, which was capable of being excavated by machinery.

This want was first met by a lock invented by one Gory, for which a patent was issued to him April 22, 1873, numbered 138,148. This patent consisted of "such a construction of the shell or frame of the lock that it is adapted to fasten itself within a routed cavity in the wood, and thus dispense with mortising and fastening screws." "The shell, A," said the patentee, "is so constructed that upon each side of the rear face (and by the rear face is understood the face nearest the front of the drawer) an extension projection or wing, *a*, is formed, which, when snugly fitted into a corresponding depression, *b*, at each side of the routed cavity, B, serves to retain the lock securely in the routed cavity. In this way the recess for the reception of the lock for drawers or similar uses, instead of being a mortise necessarily cut by a slowly operating mortising machine, is. an open sided recess made

almost instantly by the rapidly-revolving tool of a routing-machine or groover. . . . This improved form of lock, when driven snugly into a routed cavity such as is described, requires no fastening screws to hold it in place, and consequently reduces the expense of the lock and fastening in addition to the reduced cost of producing the cavity to receive it." This was the underlying patent of all similar devices, and while it never seems to have come into general use, subsequent patents have been merely improvements upon it.

The peculiar feature of his patent was not only in rounding the bottom of the lock so that it could be admitted into a cavity cut out by a revolving tool known as a router, but in making the cavity larger in the rear than in the front, so that a lock correspondingly shaped might be slipped into the cavity from above, and held there without the aid of screws.

While the single claim of this patent was confined to a lock whose frame is made with side extensions at the rear face, to enable the lock to be firmly secured in the routed cavity, several different forms of cavity are shown in the drawings, nearly all of which are dovetailed in such manner that the lock is received and held in position without the aid of other fastenings. This lock was a most ingenious device, and no doubt involved patentable novelty. Three-fourths of this patent now belong to the defendant. There was a difficulty with it, however, in the fact that the patentee took off all the projections from the old style of lock, including those of the broad front plate, through which the screws were inserted, which was cut off so as to be flush with the side of the shell, the projecting key-post which was cut flush with the face of the cap, and the top plate or selvedge through which the bolt is passed. It consisted merely of a shell fitted snugly upon all sides into a cavity routed out of the exact size to receive it. For these or other reasons, the lock never seems to have gone into general use. Indeed, the evidence is that it was never used at all.

Next in order of time is patent numbered 241,828, issued May 24, 1881, to Henry L. Spiegel. In this device "the back plate of the lock" (that is, the plate nearest the front of the

drawer) "is made to project on each side of the lock, and adapted to fit a groove or dovetail formed in the inner surface of the drawer front," the object of the improvement being to provide a lock which may be secured in its receptacle without the aid of screws. The lock shown was of the ordinary pattern, except that its back plate was provided with projecting edges, designed to fit in a groove and hold the lock fast. "It is obvious," said the patentee, "that the groove B may be made dovetailed, and the edges G of the back plate bent to a corresponding angle to fit therein, if desired." His claim was for a cabinet lock with its rear plate projecting beyond each side of the lock-case, and having the upper part of each projection bent toward the front plate, which front plate had a slit and strip, which, when the lock is forced home, was set into the wood by a hammer, and thus the lock was held from working out of its receptacle. This patent is also owned by the defendant.

His idea was in substance that of so constructing the lock that there should be a space between the front and rear plates to receive the walls of a routed mortise. Both the front and back plate, however, as well as the selvedge, were made rectangular, and hence the lock was no better adapted for insertion in a routed cavity than was the old-style lock. This lock also seems to have been a failure in practical use, and so far as the record shows none were ever constructed under the patent.

On April 23, 1883, Spiegel filed an application for another patent, which was issued to him April 21, 1885, two and one-half years after the Orum patent in suit; but as the lock was invented before that of Orum, and as Orum had full knowledge of it before he made his alleged invention, it should be considered as part of the art as it existed at the date of the Orum patent.

In his specification, speaking of prior devices, and apparently of the Gory patent, the patentee states: "In view of the fact that locks constructed with projecting key-posts possessed certain advantages that met the demand of the trade, the peculiar construction of lock above described, with its flush key-post and adapted to be driven into a routed cavity, failed

of introduction, preference being given to the old form of lock-case, with its projecting key-post, though it necessitated the hand-chiselled mortise and fastening-screws for its attach-ment." Speaking of his own prior patent of May 24, 1881, he says: "The lock-case being thus secured at its sides, allowed of a space or recess being formed in the rear wall of the mor-tise and in rear of the cap-plate for the reception of the pro-jecting key-posts, which space was covered and concealed from view by the projecting top plate for selvedge. While this latter construction of lock possessed valuable features of im-provement not disclosed by the prior art, yet the form of lock shown and described in the patent is such as to preclude its adoption for use in routed cavities, because this front plate is not of the proper form to fit within and cover a cavity made by a routing tool. The object of this invention is to obviate the objectionable features and defects hereinbefore set forth, and provide a lock-case of such form and construction that it may have a projecting key-post, if so desired, and be secured within a routed cavity, and snugly retained therein, so as to conceal the cavity from view, and form a neat and finished appearance when in place. With these ends in view my inven-tion consists in a lock-case having its edges constructed to engage or interlock with the side walls of a routed cavity, and provided with a front plate having a rounded bottom adapted to fit within a countersunk recess around the routed cavity, and constitute a support for the lock-case and conceal the cavity from view." This lock differs from the prior Spiegel patent principally in being rounded at the bottom so as to be fitted to a routed cavity, and prevent the displacement of the lock either in a forward or backward direction, and also in having a space in the rear wall of the cavity for a projecting key-post.

. This was practically the state of the art when Orum's patent was granted. In this patent the shell or case of the lock is dovetailed to fit a corresponding dovetailed cavity, and the selvedge is also made of similar dovetail shape. The front plate projects upon each side of the case and is rounded at the bottom, so that it may be fitted to a routed cavity. The

lock is held in position by two tacks through the upper corners of the front plate, or by a single tack driven through a hole at the base of the plate. To insert the lock, it is simply slipped down into place in the mortise and secured against lifting by one or more tacks which are used merely to prevent the lock from slipping out of the mortise, and are not called upon to resist a strain. His claim is for "the lock herein described, having a dovetail cap and top plate, and a front plate projecting laterally and below the cap and rounded at the bottom, whereby the lock is adapted for insertion in a mortise formed by a laterally-cutting bit, and when in position is sustained by a countersunk front plate, as set forth." There is no mention made, in the specification or claim, of a projecting key-post or of any space for its reception, although such a key-post is shown in the drawing, and it was evidently intended that the mortise should be made deep enough to receive it, or that a special channel should be cut out for that purpose. The selvedge was made wide enough to cover a cavity corresponding in depth to the projection of such key-post.

In view of the advance that had been made by prior inventors, it is difficult to see wherein Orum displayed anything more than the usual skill of a mechanic in the execution of his device.

All that he claims as invention is found in one or more of the prior patents. The dovetailed cavity and the correspondingly shaped case or shell is only a copy of a cavity shown in Fig. 8 of the Gory patent, and it certainly required no invention to make the top plate or selvedge of the same shape so as to completely cover the cavity. The projecting front plate rounded at the bottom is shown in the second Spiegel patent, both of these patents also exhibiting a projecting back and front plate, and a projection or groove in the mortise between them. Neither is the countersunk recess for the reception of the front plate novel, since it is also found in the second patent to Spiegel, and expressly set forth as an element of his first two claims. In each case it is used for the purpose of supporting the lock vertically, and also of

preventing it falling backward against the inner wall of the mortise.

In view of the fact that Mr. Orum had no actual knowledge of the Gory patent, he may rightfully claim the quality of invention in the conception of his own device, but as he is deemed in a legal point of view to have had this and all other prior patents before him, his title to invention rests upon modifications of these, too trivial to be the subject of serious consideration. His "radically new idea of making the mortise as deep as the width of the projecting selvedge and of cutting out the selvedge at its ends," as claimed by his counsel, was such as would have occurred at once to an ordinarily intelligent mechanic who had the previous devices before him. To speak of these trifling variations as involving months of labor, thought, and experiment is a misuse of words. In his own testimony, Mr. Orum, who was called as a witness by the defendant, says that if he had been acquainted with the Gory patent he would have had no difficulty in making the top plate of the Spiegel lock conform to a dovetailed cavity, or any other routed cavity. While the testimony of a patentee in derogation of his own patent is usually open to some suspicion, this opinion is so obviously correct that it needs only a comparison of his device with those of Gory and Spiegel to confirm it.

It is true the Orum lock seems to have gained an immediate popularity, to have met with large and increasing sales, and to have had the usual effect of successful patents in stimulating the activity of business competitors to produce an equally useful and popular device. Were the question of patentability one of doubt this might suffice to turn the scale in favor of the patentee. But there are so many other considerations than that of novelty entering into a question of this kind that the popularity of the article becomes an unsafe criterion. For instance, a man may, by the aid of an alluring trade-mark, succeed in catching the eye of the people, and palming off upon them wares of no greater intrinsic value than those of his rivals; but such trade-mark may be, and usually is, wholly destitute of originality, often taken from some prior publica-

tion, and appropriated to the specific purpose of the owner. The same result may follow from the more attractive appearance or the more perfect finish of the article, from more extensive advertising, larger discounts in price, or greater energy in pushing sales. While the popularity of the Orum lock may be due to its greater usefulness, or to the fact that it was put upon the market just at the time when cabinet-makers were looking for a lock of this description, it is certainly not due to any patentable feature in its construction.

The decree of the court below dismissing the bill is, therefore,

*Affirmed.*