**CALIFORNIA FRUIT GROWERS' EXCHANGE et al. v. BLAKE, MOFFITT & TOWNE.**

**LA HABRA FRUIT GROWERS' ASS'N v. SAME.**

**YORBA LINDA CITRUS ASS'N v. SAME.**

Circuit Court of Appeals, Ninth Circuit.
May 23, 1927.

No. 5052.

1. Patents ⬡⟶45—Extensive sale held of no importance, when invention lacks patentable novelty.

Extensive sale of patented article *held* not of any importance, when alleged invention lacks patentable novelty.

2. Patents ⬡⟶328—1,099,281, claim 3, for a fruit package, invalid for lack of invention.

Crumrine patent, No. 1,099,281, claim 3, for a fruit package designed in such manner as to prevent bruising, *held* invalid for lack of invention.

3. Patents ⬡⟶129(1)—Purchase and use of patented article while prices were satisfactory held not to preclude attack on validity of patent for want of novelty.

Defendants' purchase and use for many years of supplies of patented article, while prices were satisfactory, *held* not to preclude attack on validity of patent for want of novelty.

Appeal from the District Court of the United States for the Southern Division of the Southern District of California; William P. James, Judge.

Separate patent infringement suits by Blake, Moffitt & Towne against the California Fruit Growers' Exchange and another, against the La Habra Fruit Growers' Association, and against the Yorba Linda Citrus Association, consolidated for trial. Decrees for plaintiff (14 F.[2d] 756), and defendants appeal. Reversed.

Chas. E. Townsend and Wm. A. Loftus, both of San Francisco, Cal., and Oscar Lawler, of Los Angeles, Cal., for appellants.

John H. Miller, A. W. Boyken, and Charles S. Cushing, all of San Francisco, Cal., for appellee.

Before HUNT, RUDKIN, and DIETRICH, Circuit Judges.

HUNT, Circuit Judge. In three cases consolidated for trial decrees were entered finding appellants were infringing claim 3 of letters patent No. 1,099,281, issued to C. L. Crumrine and another on June 9, 1914, the patent being now owned by the plaintiff appellee. Injunction was issued, and defendants appeal.

Preliminarily, the appellee's motion to dismiss the appeals or to affirm the decrees, upon the ground that the appellants have not complied with equity rule 75, will be denied. The record is unusually brief for a patent case, and sufficiently conforms to the proper practice. The patent relates to a fruit package.

The specifications set forth that in boxing oranges, for example, the oranges in the upper layer project above the edges of the box, so that, when the cover is laid upon the oranges and is pressed down, the oranges at the top often have their skins squeezed between the cover and the upper edge of the box, thus causing bruising of the skin, which causes decay. Crumrine's object was to provide means, which become part of the package itself, and which serve to prevent the fruit from being damaged. To attain that end the patentee provided what he calls an end guard; that is, a piece of cardboard which he bends along a creased line at right angles adjacent to the two ends to form inturned wings. The guard thus formed is applied to the package in the following manner:

Before the top layer of oranges is placed in the box, one of the winged end guards is put at the end, with the wings extending from the corners a short distance along the sides of the box, so as to be between the fruit and the box. Then the top layer of oranges is put into the box, and the guard projects above the edge of the box, flush with the top layer of oranges. The cover of the box is then pressed down, so that the oranges are compressed together. At the same time the cover of the box presses against the upper edge of the guard, and presses it down with the oranges between the fruit and the end of the box, so that the oranges in contact with the guard are prevented from being in contact with the edges of the box, and thus they are kept from being bruised. As a rule there is no relative movement between the oranges and the guards. Both slide down into the box together.

The patent has four claims, but only claim 3 is now involved. It reads as follows:

"3. A fruit package comprising a box for holding the fruit, a guard consisting of a sheet of self-supporting, flexible material having inturned wings at each end thereof; said guard being arranged between the edge of the box and the fruit, with its winged portions fitting the corners of the box, said guard preventing contact of the fruit with the edge of the box when the cover is applied."

The claims other than 3 call for a paper

guard, without reference to shape or length. Claim 3 is the only one which includes specifically the inturned wings at each end of the strip of flexible material. In practice, if the cardboard is inserted before the top layer of fruit is put into the box, and the cardboard is put flush with the top row, the pressure on the fruit will generally take the cardboard down, without buckling the top of the cardboard. Naturally buckling will sometimes occur, depending upon the rigidity of the cardboard or other material used, and the extent of the projection of the material above the end of the box.

It was shown that straight pieces of cardboard or other flexible material have long been used by fruit packers at the ends of boxes to protect fruit against abrasion. Sometimes the straight strips were so long that they were bent near the ends, and thereby extended along the sides of the box. Whether with or without bent ends, the manner of operation is substantially the same. The cardboard is usually put in the box before the last two layers of fruit are put in, and is so placed as to be level with the top of the fruit, to go down with the fruit as pressure is put on the cover of the box. Of course, by using cardboard with wings, the fruit in the corners of the box is better guarded against friction with the sides of the box; but we are unable to see that the lengthening of the guard, provided with inturned wings at each end, involved invention within the protection of the patent laws.

Any one who used the straight cardboard could supply the thought of extending the material, so as to give greater protection to the oranges or like fruit in the corners. Werk v. Parker, 249 U. S. 130, 39 S. Ct. 197, 63 L. Ed. 514. As we view it, the patentee only carried forward the original thought of using cardboard on the ends by making a slight change in construction, which did the same thing in the same way by substantially the same means, but with some increased capacity for usefulness. Railroad Supply Co. v. Elyria Iron & Steel, 244 U. S. 285, 37 S. Ct. 502, 61 L. Ed. 1136; Roberts v. Ryer, 91 U. S. 150, 23 L. Ed. 267. [1-3] The argument that the sales of the guards with the wings has been extensive is not important, when the alleged invention lacks patentable novelty. Olin v. Timken, 155 U. S. 141, 15 S. Ct. 49, 39 L. Ed. 100.

We are far from satisfied that defendants' use of straight and turned-in end guards for a number of years, without questioning the validity of the patent, should be held to defeat their position in this litigation. Plaintiff was a manufacturer of wrappers and paper supplies used in packing, and sold guards and strips, short and long, and other supplies, to many citrus fruit packers in California. As long as prices were satisfactory, their business relations were amicable; but, when defendants made complaint of the prices asked, the plaintiff stated that the end guards were patented, and it was therefore not defendants' concern to question what prices were charged.

We hold that claim 3 of the patent is void for lack of invention, and must therefore reverse the decree and·remand the case, with directions to dismiss the complaint; costs in favor of appellants.

Reversed.