## CITY OF ST. LOUIS v. PRENDERGAST.

Circuit Court of Appeals, Eighth Circuit.
September 28, 1928.

No. 8001.

Arthur C. Eckert, of St. Louis, Mo., for appellant.

J. Henry Kinealy, of St. Louis, Mo. (William B. Kinealy, of St. Louis, Mo., on the brief), for appellee.

Before VAN VALKENBURG and BOOTH, Circuit Judges, and POLLOCK, District Judge.

BOOTH, Circuit Judge. This is an appeal from a decree which held valid claim 2 of United States patent No. 1,012,433, issued December 19, 1911, to appellee, Edward Prendergast, for a "truncated box for street valves, fire plugs, meters, and the like," and which held further that appellant city had infringed said claim. The infringement was and is conceded, if the claim is valid. The claim reads as follows:

"The herein described truncated box for street valves, fire plugs, meters and the like, comprising a base section formed of four plates of reinforced concrete of similar shapes and dimensions, the ends of each plate being tapering and each plate being provided on its inside face with a shoulder disposed transversely of the plate and substantially parallel with the end of the plate and set back a distance substantially equal to the thickness of the plate for supporting the end of the adjacent plate, and a top section formed of four plates of reinforced concrete, said plates being of similar shapes and dimensions and each plate of the top section being provided adjacent one of its ends with a transversely disposed shoulder running substantially parallel with the ends of the plate and set back from the end at a distance about equal to the thickness of the plate, for supporting the end of the adjacent plate."

The elements of the claim, broadly speaking, are (1) a base section of a truncated box; (2) a top section of the same; (3) the positioning of the top section on the base section. The elements of each section are four plates: (a) Of reinforced concrete; (b) of similar shape and dimensions; (c) having tapering ends; (d) having a shoulder for supporting the end of the adjacent plate (1) located on the inside face of the plate; (2) disposed transversely of the plate; (3) substantially parallel with the end of the plate; (4) set back from the end of the plate at a distance substantially equal to the thickness of the plate.

The defenses set up are numerous, among them: (1) Anticipation by certain specified structures, and by 18 prior patents; (2) lack of invention in view of the prior art; (3) prior public uses; (4) dedication to the public of the claimed subject-matter; (5) laches.

In the view we take of the case, it will be necessary for us to discuss only the second of the above defenses. The prior art disclosed many boxlike structures of various shapes, made of various materials, and used for various purposes. Many of these structures were covered by patents. Among others may be mentioned: Ober, No. 9510, reissued December 21, 1880, frustum in shape, for water main taps; Meiners, No. 33,787, December 25, 1900, truncated, stop valve box; Walsh. No. 114,996, May 16, 1871, truncated, hydrant box; Eby, No. 160,088, February 23, 1875, truncated, transplanting box; Overall, No. 274,022, March 13, 1883, cistern constructed of conical, truncated section; James, No. 964,784, July 19, 1910, truncated, meter box.

Prior to the issuance of the patent in suit, appellee had secured three other United States patents—No. 945,596, January 4, 1910; No. 945,597, January 4, 1910; No. 1,012,432, December 19, 1911—each covering a truncated box for street valves, fire plugs, and the like. The first two of these patents, of course, became part of the prior art so far as the patent in suit was concerned. All three of these prior patents of appellee disclosed truncated boxes made up of a base section and a top section. Each section was made up of four plates having tapering ends. In two of the patents, Nos. 945,597 and 1,012,432, the plates forming the respective sections were interchangeable.

Three unpatented structures of the prior art which were disclosed by the evidence should be noted. The first is a wooden box in the shape of a truncated pyramid, used as a valve box. The ends of the planks are tapering. On the inside of each of the four corners of the box is a post, to which the planks of two sides are nailed. Two opposite sides of the box have the planks longer by twice the thickness of the planks than the other two opposite sides, so that the two shorter sides are included between the two longer ones. The testimony seemed to indicate that the box was constructed by first nailing two corner posts to each of the two shorter sides and then nailing the longer sides to the posts. It is perfectly clear, however, that the box could be constructed by first nailing one corner post to each of the four sides. The four sides would not be interchangeable, unless they were made of the same length, and unless the corner posts were nailed one to each of the sides and away from the edge of the sides by the distance of the thickness of a plank.

The second prior unpatented structure consisted simply of two of the wooden boxes already described, placed one on top of the other. As they were both the same size, they, of course, did not form a unitary truncated box, such as shown in the patent in suit. The third prior unpatented structure was a truncated valve box made of four concrete slabs mitered at the edges to form the four corners, and held together at these corners by twisting or tying the ends of the embedded re-inforcing wire. The four sides were interchangeable.

For the sake of clarity we give sketches:

Figure 1, the box under the prior Prendergast patent, No. 945,597:

Figure 2, one of the interchangeable plates of the same box:

Figure 3, the unpatented wooden box of the prior art:

Figure 4, the unpatented concrete box of the prior art:

TOP PLAN VIEW.

MEDIAN SECTION ON A-A

We also reproduce sketches:

Figure 5, the box disclosed by claim 2 of the patent in suit:

Figure 6, one of the plates going to make up one of the sections of the last-mentioned box:

A comparison of these various prior art structures with the structure of the patent in suit, and a consideration of the evidence, makes it very apparent, in our judgment, that invention cannot be claimed for the truncated form of the box, nor for the placing of one section upon another, nor for the making of the plates out of concrete, nor for making the four plates of each section interchangeable. All of these features were old in the art.

The only remaining feature is the use of plates, each having a shoulder on its inner face and positioned as specified in the claim of the patent. It is to be noted that neither the shoulder itself nor the plate with the shoulder attached was claimed by the patentee as patentable. Therefore both are conclusively presumed to be old or not patentable. Johnson, etc., Co. v. Noser, etc., Co., 9 F.(2d) 265 (C. C. A. 8); Automatic, etc., Co. v. McNiece, etc., Co., 20 F.(2d) 578 (C. C. A. 8); Richards v. Chase Elevator Co., 159 U. S. 477, 486, 16 S. Ct. 53, 40 L. Ed. 225; Hay v. Heath Cycle Co. (C. C. A.) 71 F. 411, 413; Campbell v. H. T. Conde Imp. Co. (C. C.) 74 F. 745. As a matter of fact, shoulders and shoulders on concrete plates were both old and well known in the prior art. The use of the shoulder in the patent in suit was to support the end of the adjacent plate. The same use is common in the prior art. Examples are to be found in the disclosures of many patents, among others: Spencer, No. 534,232, February 12, 1895, burial vault; McGraw, No. 563,506, July 7, 1896, knockdown box; Thomas, No. 786,858, April 11, 1905, knockdown box; Owen, No. 606,230, June 28, 1898, grave vault; Fowler, No. 929,847, August 3, 1909, burial vault; Van Camp, No. 597,625, January 18, 1898, burial vault.

Such being the state of the prior art, the vital questions are: Did it involve invention to take the step of substituting a plate with a shoulder, which was old in the art, for a plate with a mitered edge, also old in the art? Or, did it involve invention to take the step of substituting a plate with a shoulder, which was old in the art, for a plate, also old in the art, having on its end notches and lugs for interlocking with and supporting the adjacent plate? Or, did it involve invention to take the step of substituting a plate with a shoulder, which was old in the art, for a side or plate of the wooden box of the prior art whose sides would be interchangeable by simply making them of equal length and positioning the wooden corner posts one on each of the sides?

The answer to these questions is conditioned by well-settled principles and rules. In Thompson v. Boisselier, 114 U. S. 1, 11, 5 S. Ct. 1042, 1047 (29 L. Ed. 76) the court said:

"The provision of the Constitution, article 1, § 8, subd. 8, is, that the Congress shall have power 'to promote the progress of science and useful arts, by securing for limited times to authors and inventors the exclusive right to their respective writings and discoveries.' The beneficiary must be an inventor and he must have made a discovery. The statute has always carried out this idea. Under the Act of July 4, 1836, 5 Stat. 119, § 6, in force when these patents were granted, the patentee was required to be a person who had 'discovered or invented' a 'new and useful art, machine, manufacture or composition of matter,' or a 'new and useful improvement in any art, machine, manufacture, or composition of matter.' In the Act of July 8, 1870, 16 Stat. 201, § 24, the patentee was required to be a person who had 'invented or discovered any new and useful art, machine, manufacture or composition of matter, or any new and useful improvement thereof;' and that language is reproduced in section 4886, Rev. Stat. [35 USCA § 31]. So, it is not enough that a thing shall be new, in the sense that in the shape or form in which it is produced it shall not have been before known, and that it shall be useful, but it must, under the Constitution and the statute, amount to an invention or discovery."

In Atlantic Works v. Brady, 107 U. S. 192, 199, 2 S. Ct. 225, 231 (27 L. Ed. 438), the court said:

"The process of development in manufactures creates a constant demand for new appliances, which the skill of ordinary head workmen and engineers is generally adequate to devise, and which, indeed, are the natural and proper outgrowth of such development. Each step forward prepares the way for the next, and each is usually taken by spontaneous trials and attempts in a hundred different places. To grant to a single party a monopoly of every slight advance made, except where the exercise of invention, somewhat above ordinary mechanical or engineering skill, is distinctly shown, is unjust in principle and injurious in its consequences.

"The design of the patent laws is to reward those who make some substantial discovery or invention, which adds to our knowledge and makes a step in advance in the useful arts. Such inventors are worthy of all favor. It was never the object of those laws to grant a monopoly for every trifling de-

vice, every shadow of a shade of an idea, which would naturally and spontaneously occur to any skilled mechanic or operator in the ordinary progress of manufactures. Such an indiscriminate creation of exclusive privileges tends rather to obstruct than to stimulate invention."

In McClain v. Ortmayer, 141 U. S. 419, 426, 12 S. Ct. 76, 78 (35 L. Ed. 800), the court said:

"What shall be construed as invention within the meaning of the patent laws has been made the subject of a great amount of discussion in the authorities, and a large number of cases, particularly in the more recent volumes of reports, turn solely upon the question of novelty. By some, invention is described as the contriving or constructing of that which had not before existed, and by another, giving a construction to the patent law, as 'the finding out, contriving, devising or creating something new and useful, which did not exist before, by an operation of the intellect.' To say that the act of invention is the production of something new and useful does not solve the difficulty of giving an accurate definition, since the question of what is new as distinguished from that which is a colorable variation of what is old, is usually the very question in issue. To say that it involves an operation of the intellect, is a product of intuition, or of something akin to genius, as distinguished from mere mechanical skill, draws one somewhat nearer to an appreciation of the true distinction, but it does not adequately express the idea. The truth is the word cannot be defined in such manner as to afford any substantial aid in determining whether a particular device involves an exercise of the inventive faculty or not. In a given case we may be able to say that there is present invention of a very high order. In another we can see that there is lacking that impalpable something which distinguishes invention from simple mechanical skill. Courts, adopting fixed principles as a guide, have by a process of exclusion determined that certain variations in old devices do or do not involve invention; but whether the variation relied upon in a particular case is anything more than ordinary mechanical skill is a question which cannot be answered by applying the test of any general definition."

In Penn. Railroad v. Locomotive Truck Co., 110 U. S. 490, 494, 4 S. Ct. 220, 222 (28 L. Ed. 222), the court said:

"It is settled by many decisions of this court, which it is unnecessary to quote from or refer to in detail, that the application of an old process or machine to a similar or analogous subject, with no change in the manner of application, and no result substantially distinct in its nature, will not sustain a patent, even if the new form of result has not before been contemplated."

Many authorities are cited.

In Smith v. Nichols, 21 Wall. 112, 119 (22 L. Ed. 566) the court said:

"But a mere carrying forward or new or more extended application of the original thought, a change only in form, proportions, or degree, the substitution of equivalents, doing substantially the same thing in the same way by substantially the same means with better results, is not such invention as will sustain a patent. These rules apply, alike, whether what preceded was covered by a patent or rested only in public knowledge and use. In neither case can there be an invasion of such domain and an appropriation of anything found there. In one case everything belongs to the prior patentee, in the other, to the public at large."

See, also, Roberts v. Ryer, 91 U. S. 150, 23 L. Ed. 267; Burt v. Evory, 133 U. S. 349, 10 S. Ct. 394, 33 L. Ed. 647; Belding Manufacturing Co. v. Corn Planter Co., 152 U. S. 100, 14 S. Ct. 492, 38 L. Ed. 370; Market Street Railway Co. v. Rowley, 155 U. S. 621, 15 S. Ct. 224, 39 L. Ed. 284; Railroad Supply Co. v. Elyria Iron Co., 244 U. S. 285, 37 S. Ct. 502, 61 L. Ed. 1136; Werk v. Parker, 249 U. S. 130, 39 S. Ct. 197, 63 L. Ed. 514; Miner v. T. H. Symington Co. (C. C. A.) 247 F. 515; California, etc., Exchange v. Blake, Moffitt & Towne (C. C. A.) 19 F.(2d) 467; In re Smith, 57 App. D. C. 204, 19 F.(2d) 678; In re Richards, 58 App. D. C. 29, 24 F.(2d) 471; King Ventilating Co. v. St. James Ventilating Co., 26 F.(2d) 357 (C. C. A. 8).

■ It is also well established that it does not constitute invention to combine old devices into a new article or structure, without producing any new mode of operation. Burt v. Evory, supra; Stimpson v. Woodman, 10 Wall. 117, 19 L. Ed. 866; Heald v. Rice, 104 U. S. 737, 26 L. Ed. 910; Hall v. Macneale, 107 U. S. 90, 2 S. Ct. 73, 27 L. Ed. 367.

■ The adaptation of an old device to the same use in a slightly different structure is not invention. Mast, Foos & Co. v. Stover Manufacturing Co., 177 U. S. 485, 493, 20 S. Ct. 708, 44 L. Ed. 856; Æolian Co. v. Wanamaker (C. C. A.) 234 F. 90; Burgess Battery Co. v. Novo Manufacturing Co. (C. C. A.) 262 F. 972.

■ Finally, it is well established that a patentee is presumed to have had before him all

prior patents and prior art devices. Railroad Supply Co. v. Elyria Iron Co., supra, page 291 of 244 U. S. (37 S. Ct. 502); Mast, Foos & Co. v. Stover Manufacturing Co., supra; Duer v. Corbin Cabinet Lock Co., 149 U. S. 216, 223, 13 S. Ct. 850, 37 L. Ed. 707.

Viewed in the light of the rules and principles announced in the foregoing cases, we think that the step taken by the patentee as set forth in claim 2 of the patent in suit, in making use of the plates with positioned shoulders, was a mere carrying forward of the thought embodied in the prior art structures of having the plates support each other by some form of jointure along the line of contact between their respective side edges; the step was a mere substitution of one form of jointure for another, both being old and well known in the art. No new device was produced. No new result was produced. An old device, common in numerous prior art structures, was simply transferred to an analogous structure, where it acted in its usual old time way. We think the step was one which would readily suggest itself to a skilled mechanic having the prior art before him, and that it did not rise to the dignity of invention.

Having reached the conclusion that claim 2 of the patent is invalid, we find it unnecessary to discuss the other defenses interposed.

Decree reversed.