GEORGE F. HINRICHS, Inc., v. HENDER-SON et al.

Circuit Court of Appeals, Eighth Circuit. April 24, 1929.

No. 8232.

William Houston Kenyon, of New York City (Douglas H. Kenyon and Kenyon & Kenyon, all of New York City, and Eliot, Blayney & Bedal, of St. Louis, Mo., on the brief), for appellant.

Carl S. Lloyd, of Chicago, Ill. (Carr, Carr & Gravely, of St. Louis, Mo., on the brief), for appellees.

Before BOOTH, Circuit Judge, and JOHNSON and McDERMOTT, District Judges.

BOOTH, Circuit Judge. This is a patent suit in the usual form, involving United States patent No. 1,516,012, issued to appellant, plaintiff below, November 18, 1924, application filed September 23, 1922, for poultry packing. The decree below was for the defendant, on the ground that the alleged invention lacked patentable novelty.

The patent has 14 claims. The first 8 relate to an alleged "manufacture," the last 6 to an alleged "art" or method of packing. Claim 2 may be taken as typical of the first 8 claims, and claim 14 as typical of the last 6. They read respectively as follows:

"2. As an article of commerce, a package comprising a container containing a plurality of birds in sitting position placed in opposite rows, thereby providing a free open space between two rows of birds, the tail ends of the sitting birds in engagement with the bottom of the container, and the neck ends in engagement with the top of the container, parts of said birds being placed in engagement whereby the birds will be maintained in sitting position."

"14. A method of packing poultry con- sisting in arranging a plurality of fowls in sitting position in opposite rows, thereby leaving a free open space between the breasts of opposite fowls, placing the tail ends of the birds in engagement with the bottom of the box, and sustaining the bodies of the fowls in substantially upright position, said fowls being sustained in part by the mutual relation of the opposite rows of birds."

The elements of claim 2 are: 1. A container or box. 2. A number (usually 12) of birds (poultry), arranged in the box, (a) in a sitting position; (b) placed in opposite rows, 6 in a row, with an open space between the two rows; (c) the tail ends of the birds resting on the bottom of the box; (d) the neck ends in contact with the cover of the box; (e) the heads and necks hanging down behind the backs of the birds; (f) the legs of the birds in each row being placed under and in contact with the legs of the birds in the opposite row.

The completed package represents the "manufacture," and the making up or arranging of the package represents the "art" or method of packing.

The defenses are: 1. Want of patentable novelty in view of the prior art. 2. Prior use. 3. Subject-matter not patentable under the patent statutes of the United States. 4. Noninfringement.

Taking up the first defense, we learn from the evidence that there were a number of different methods of packing poultry in common use, years prior to the application for the present patent. There were the so-called "wet pack," and the so-called "dry pack." There was also a "side pack," which consisted in packing the birds on their sides. Finally, there was the "breast up pack." This "breast up pack," according to the evidence, contained the following elements: A box with the birds arranged in two rows opposite each other; six in each row; the tail ends resting upon the bottom of the box; the neck ends or upper part of the breasts being in contact with the cover of the box; the heads and necks hanging behind the backs or along the sides of the birds; and the legs of the birds in each row being placed beneath the legs of the birds in the opposite row. The evidence does not show conclusively that all of the so-called "breast up packs" had all of these elements, but it does show that some of them had all of these elements.

Appellant contends that there are numerous vital differences between the Hinrichs' pack under the patent and the "breast up pack" of the prior art: *First,* in the Hinrichs' pack the birds are placed in the box

in a sitting posture with their bodies substantially vertical, while in the "breast up pack" the birds are not placed in a sitting posture with their bodies substantially vertical. *Second,* in the Hinrichs' pack the birds are locked in place by the bottom and top of the box by reason of their substantially vertical position, while in the "breast up pack" the birds, being more nearly in a horizontal than a vertical position, are not so locked. *Third,* in the Hinrichs' pack air spaces of notable size occur between the upright breasts of the opposite rows of birds, while in the "breast up pack" there is no such provision of air spaces. *Fourth,* in the Hinrichs' pack there is a combination of birds locked in place and of notable air spaces, while in the "breast up pack" there is neither of these elements. *Fifth,* the Hinrichs' pack provides an excellent display package, while the "breast up pack" cannot and does not make such a display.

When the foregoing contentions of the appellant are analyzed, they reduce themselves to this, that the pith of the Hinrichs invention is the angle at which the birds are positioned in sitting posture in the box; that this angle is greater than the similar angle involved in the "breast up pack" of the prior art. The contention is that this difference causes the birds to be held firmly in position so that they will not shift during transportation, and also provides better air space.

It is to be noted, however, that the plaintiff's patent neither in the specifications nor in the claims specifies the angle at which the birds are sitting in the box. The term "sitting position" is indefinite. It might range from an exact perpendicular to an angle of 45 degrees or perhaps even less. Figure 2, accompanying the patent, apparently shows the birds sitting at an angle of approximately 60 degrees. It is, of course, evident that if the angle were reduced much below 45 degrees the pressure of the cover upon the neck ends of the birds would have a tendency to make the birds slide on their tail ends toward the opposite row of birds; whereas if the angle were considerably larger than 45 degrees the pressure of the cover against the neck ends would have a tendency to hold the birds in an upright position. The evidence shows that in the "breast up pack" of the prior art the angle at which the birds were positioned in the box varied from 30 to approximately 50 degrees. It is apparent also that the thrust of the legs of the birds in each row against the legs of the birds in the opposite row would of itself have a tendency to keep the birds in a somewhat upright posi-

tion, even though the sitting posture varied considerably from the vertical. This is recognized in claim 14 of the patent, where it says: " * * * Placing the tail ends of the birds in engagement with the bottom of the box, and sustaining the bodies of the fowls in substantially upright position, *said fowls being sustained in part by the mutual relation of the opposite rows of birds.*" (Italics ours.)

It may be conceded that the sitting posture of the birds as disclosed by the patent in suit is more nearly vertical than the sitting posture of the birds in the "breast up pack" of the prior art, as ordinarily adopted.

It must be remembered, however, that it is not every change, even though it constitutes an improvement, that is necessarily patentable. There must be a product or a method which amounts to invention or discovery. The mere carrying forward of an old thought, the mere change in form, proportion, or degree is not sufficient as a general rule to constitute invention.

In Smith v. Nichols, 21 Wall. 112, 119 (22 L. Ed. 566), the court said: "But a mere carrying forward or new or more extended application of the original thought, a change only in form, proportions, or degree, the substitution of equivalents, doing substantially the same thing in the same way by substantially the same means with better results, is not such invention as will sustain a patent. These rules apply alike, whether what preceded was covered by a patent or rested only in public knowledge and use." See, also, Atlantic Works v. Brady, 107 U. S. 192, 199, 2 S. Ct. 225, 27 L. Ed. 438; City of St. Louis v. Prendergast (C. C. A.) 29 F.(2d) 188 (C. C. A. 8), and cases cited.

It must also be borne in mind that an inventor is presumed to have had before him all of the prior art at the time he made his alleged invention. Railroad Supply Co. v. Elyria Iron & Steel Co., 244 U. S. 285, 291, 37 S. Ct. 502, 61 L. Ed. 1136; Mast, Foos & Co. v. Stover Mfg. Co., 177 U. S. 485, 20 S. Ct. 708, 44 L. Ed. 856; Duer v. Corbin, etc., Co., 149 U. S. 216, 223, 13 S. Ct. 850, 37 L. Ed. 707; City of St. Louis v. Prendergast, supra.

In view of these principles we think that the slight step taken by appellant in increasing the angle of the sitting posture at which the birds in his boxes were placed did not amount to invention. See City of St. Louis v. Prendergast, supra.

In dismissing the bill the trial court used the following language: "A consideration of the evidence submitted in the case is

conclusive to the effect that substantially the same method of packing poultry as is exhibited by the patent in suit has been long known and widely used by leading packing. concerns. Every essential element of this method has been extensively employed ·by large and responsible concerns at least since 1913 and 1914—ten years prior to the granting of the patent. The plaintiff only claims to have placed the chickens in a slightly more upright position in the box. If true, this is not of such significance as to make the result patentable. We find no novelty in either the method of packing, or in the package itself." We think the conclusions thus stated are amply supported by the evidence.

In view of the result reached relative to the defense of lack of patentable novelty, it is unnecessary to take up for discussion the other defenses.

The decree is affirmed.