## WOODLEY et al. v. AMERICAN CONTAINER CORPORATION.

No. 8907.

Circuit Court of Appeals, Eighth Circuit.

Feb. 20, 1931.

Marston Allen, of Cincinnati, Ohio, and Henry M. Huxley, of Chicago, Ill. (Allen & Allen, of Cincinnati, Ohio, on the brief), for appellants.

William F. Hall, of Washington, D. C., for appellee.

Before STONE and BOOTH, Circuit Judges, and DEWEY, District Judge.

BOOTH, Circuit Judge.

This is a patent suit in the usual form, the main defenses being denial of infringement and invalidity of the patent in view of the prior art. The patent involved is No. 1,156,122 issued by the United States to

James C. Woodley, October 12, 1915, covering both a fibrous composition and process of manufacture.

The trial court entered a decree dismissing the bill upon the merits, but whether for invalidity of the patent or for noninfringement is somewhat uncertain.

The specifications state:

"The invention has for its object the obtaining of a composition of matter having superior insulating qualities, of high resistance to the elements, capable of being readily worked, and thus adapted with slight modifications in proportions and in treatment for a wide range of usefulness as a roofing material, for electric insulation and in the manufacture of various articles in different arts."

The process is stated with several variations; the first method is thus described:

"To a suitable residuum oil I add a bituminous material such as gilsonite asphalt, grahamite, elaterite or other hard asphalt. The material is heated to a temperature of approximately 400° F. in order to reduce the bituminous ingredient to a liquid condition and effect its thorough mixture with the oil. The proportions may vary within a considerable range but should be such that when cooled the material is semi-solid and gummy. * * * To the hot liquid binding material is added a quantity of fibrous material such, for example, as waste paper which may be advantageously in the form of paper shavings or strips such as the cuttings from a printing shop, although other fibrous materials are suitable for the purpose. The paper is preferably moist or wet and its addition to the binder quickly cools the latter to a gummy condition. The mixture of fibrous material and the gummy binder is then worked in a kneading and mixing machine. The effect is first to coat the paper with the binder, so that the subsequent kneading operation thoroughly disintegrates the paper into substantially elementary fibers and each of these fibers is coated with the binder and the resulting fibrous material is thoroughly mixed until a substantially homogeneous product is obtained. The operation not only coats each of the elementary fibers with the binder but causes a considerable absorption of the binding material into the fibers approximating saturation thereof. By slowly heating the mass afterward the greater part of the water in the fibers may be driven out."

Spraying the paper with the liquid mixture may be substituted for putting the paper into the mixture.

The second method differs from the first mainly in that the gummy mass of binder and paper is forced through one or more foraminous plates, instead of being manipulated in a kneading and mixing machine; and it is stated:

"Where, as in the present case, the paper strips are covered on both sides with the gummy bituminous composition and the latter is forced through the perforations in an attenuated condition the paper is entirely disintegrated and is merged with the asphaltum in a homogeneous fibrous mass rather than as being present in the form of fibrous particles of appreciable size within the asphalt but distinct therefrom."

The third method is thus described:

"The wetting of the fibrous material produces a better product by weakening the cohesion of the elementary fibers to each other and by softening the sizing on the surface in the case of certain kinds of paper. Where the material has not been moistened the fibers do not separate so easily, but are individually broken to a greater extent than where the material is moistened, and the product is not so strong.

"In some cases it may be practicable to introduce the fibrous material to the asphalt in a solid condition, and by gently heating the mass without reducing to a liquid condition and passing the paper and gummy asphalt mixture through the kneading and mixing machine to simultaneously effect the coating and disintegration of the paper."

The product obtained by any one of these methods may be rolled into sheets for roofing purposes or fashioned into other articles.

The specifications further state:

"My invention is distinguished and characterized by the fact, that the fibrous material is present not only in a finely divided condition, but further by the fact that the fibrous material is of a character such that the particles will interlace or knit in much the same manner as floc knits or interlaces in forming a felted sheet."

There are twenty-four claims to the patent; sixteen relating to the process, and eight relating to the composition product. Claims 12 and 13 may be taken as typical of the process claims, and claim 17 as typical of the product claims. They are as follows:

"12. The process of producing a substantially homogeneous fibrous gummy mass which consists in mixing fibrous material with a bituminous binder consisting of asphalt in

such proportion that the fibrous material comprises not more than fifty per cent. by weight of the total and the mixture is of a semi-solid gummy consistency, and then disintegrating the fibrous material while in intimate adhering contact with the binder to produce a substantially homogeneous fibrous composition of substantially discrete interlaced fibers cemented together by the binder.

"13. The process of producing a substantially homogeneous fibrous gummy mass which consists in mixing fibrous material with a closely adherent bituminous binder having greater extensibility than said fibrous material, and then extending said binder sufficiently to disintegrate the fibrous material. * * *

"17. The herein described composition of matter which comprises a bituminous binding material with elementary fibers distributed substantially uniformly and homogeneously throughout the mass, the elementary fibers being separately and thoroughly coated with the binder and said fibers being interlaced or felted together, the product being a fibrous bituminous mass materially tougher than the binding material alone and being non-liquefiable by heat."

It is apparent from the statements quoted from the specifications, as also from the claims and the evidence, that the process consists of several steps after the ingredients have been selected in proper proportions. Some of these steps may be combined, but there appears to be an irreducible minimum of two: Coating of the fibers with the bituminous binder; and thereafter, while the resulting mass is in a semisolid gummy state, disintegrating and distributing the fibers in the binder.

As above stated, this last step is described as taken in connection with a kneading machine or in connection with foraminous plates.

The pith of the invention, if there was invention, seems to rest in this last step.

Mr. Stevenson, one of the witnesses on behalf of plaintiff, testified as follows:

"The characteristic Woodley mix, in my understanding, involves the use of bitumen in a certain physical condition, of which the word 'gummy' is descriptive; of certain fibers, up to a certain proportion of fibers. The compositions may or may not include fillers. This combination, and under those conditions, is mixed in a kneading machine * * * that it was essential to have kneading with extension * * * that the kneading and mixing be done under conditions where the binder is repeatedly extended; and

that as to the condition of the binder, Woodley used the term 'gummy' which was a descriptive word to me; not a technical word; its equivalent to him being that it implies a condition of viscosity, that it should be viscous. * * *

"With reference to an operation like that which occurs in pulling candy, when you extend the candy, and press it together, and extend it again—like in candy-pulling machines, witness thought this was a picture, to his mind, of a way you could get the Woodley action, and that he thought it was a good description; and that he thought that the action, the separation of fibers in the Woodley action, takes place by the fibers sticking to that mass, and when the mass is pulled apart, the fibers are separated."

### The Prior Art.

Many successful attempts to form a product composed of fibrous material with a bituminous binder are disclosed in the prior art. Hall, No. 571,117; Salathe, No. 452,-763; Allen, No. 337,472; Conboy, No. 939,-982, may be especially mentioned.

In attempting to distinguish the Woodley invention from the prior art, it was stated to the Patent Examiner:

"Two new process claims * * * are introduced for the purpose of making it entirely clear that the invention includes the kneading or pulling operation described whether applied to integral fibrous material for the purpose of disintegrating it as well as distributing and interlacing it, or to previously disintegrated fibrous material which, though introduced in a mass will be distributed and interlaced throughout the binder."

And again:

"The principal distinction of applicant's process over that of the Holmes patent lies in the facts, first, that applicant disintegrates the fibrous material while the mixture is in a gummy condition, whereas Holmes first makes a liquid mixture containing perhaps ninety per cent. of water before disintegrating; and second, that applicant disintegrates the fibrous material not directly by the machines employed but indirectly through the pulling of the bituminous gummy material and the adhesion of the latter to the paper, whereas in the Holmes process the disintegration is performed by the direct action of the beating engine on the fibrous material.

"All the claims rejected are amended to express this distinction; except three claims,

which are erased as being practically duplicates of other claims found allowable."

The Conboy patent of the prior art, in its specifications, recites:

"This invention relates to certain improvements in a new composition of matter which is particularly adapted as an economical substitute for hard rubber and is capable of practically all uses to which such rubber is applied, such for example as electrical insulation, parts of gun stocks, mouth and ear pieces for telephones, speaking tubes and the like, and for any other articles of manufacture which may be made of rubber. * * *

"The ingredients and proportions employed in the manufacture of the composition are preferably as follows: 30 lbs. of comminuted or pulverized mineral asbestos, 30 lbs. of tar or pitch, 4 lbs. of cotton or similar fibrous ingredient and one-half pound of carnauba or equivalent wax, all of which ingredients are thoroughly mixed and incorporated into a plastic body thereby softening the tar and wax by heating and kneading the other ingredients thereinto or by pulverizing the cold tar or pitch and also the wax and then thoroughly mixing the ingredients together after heating the mixture sufficiently to render it plastic and moldable to the desired form in suitable dies. The asbestos forms what may be termed the body of the composition while the tar or pitch serves to cohesively bind the comminuted particles of asbestos together. The cotton or other fibrous ingredients serves as a bond to bind the mixture of tar and asbestos together to reduce its fragility and increase its tensile strength while the wax prevents the adhesion of the composition to the sides of the mold or die during the formation of the article and at the same time gives a finished, glossy appearance to the surface of said article under pressure of the dies without further treatment, said molded article being allowed to cool or set in the mold after which it may be removed and used for the purpose for which it is intended."

From this excerpt, it will be seen that the process of the Conboy patent has much in common with the process of plaintiffs' patent. There is the mixing of the binder, the heating, the introduction of the fibrous matter, and the kneading or extending of the mass after the fibrous matter has been introduced. It is true that the plaintiffs' patent describes a two-ingredient mix, whereas the Conboy patent describes a three-ingredient mix; but we think this unimportant. It is contended by the plaintiffs that the Conboy

patent involves the use of a so-called rubber grinding mill, which has rolls in horizontal plane rolling toward each other, and that this would not produce a kneading result. It is also contended by the plaintiffs that this Conboy process fails to distribute the material so as to form a three-dimensional pad. It is to be noted, however, that the Conboy patent does not specify the use of the rubber mill, and that there were other kneading or mixing machines which any one skilled in the art might select for use under the Conboy patent, just as Woodley has done under his patent. It is also to be noted that the evidence shows that a rubber mill could be so used as to produce a kneading without a grinding action. This was the gist of the testimony of the witness Noonan.

The invention of the Conboy patent was put into commercial use. Conboy himself testified as to the making of numerous articles under his patent, and apparently the plaintiffs made an investigation of what Conboy was doing under his patent. Furthermore, certain experiments known in the record as No. 9 and No. 12 were made in the Little laboratories. As to experiment No. 12, Mr. Abson testified as follows:

"Experiment number 12 was a repetition of the Conboy experiment number 9, performed because Mr. Stevenson felt that the temperature on the first Conboy experiment was excessive, on account of something about steam leaking. This experiment used exactly the same materials and proportions as Conboy No. 9, except that the rolls were not heated with steam during the entire mixing operations. The rolls were heated when started, but the steam was off. In this experiment the temperature of the tar was 202 prior to adding the asbestos, and later was taken as 235, and the final temperature was 252. One-quarter inch disks and briquettes were also molded from the material from this experiment. Those briquettes were not broken in the Arthur D. Little Company's testing laboratory. There was not sufficient time, so I took four briquettes with me. I made tensile strength tests on them, and found them to have an average of 809 pounds per square inch. The bituminous material, the coal tar, when the cotton fibers were added, was in a viscous, adhesive and stringy condition, probably as I remember it, semi-solid and very gummy."

It does not appear that the Patent Office had before it the Conboy patent at the time of the application for the Woodley patent. If the Conboy patent was not then considered, the presumption of validity attending the is-

sue of the Woodley patent is of course weakened.

The Hall patent, No. 571,117, dated November 10, 1896, was for a composition of matter. The claim of the patent reads:

"A composition of matter comprising roofing-pitch which has been distilled until a portion of the oil which it contains has been driven off and its melting-point raised, asbestos and gum-kauri in substantially the proportions named, mixed and incorporated together by the aid of heat, substantially as set forth."

The process described in the specifications is quite similar in substantial respects to the Woodley process.

While we recognize that there are slight differences between the Woodley process on the one hand, and the Conboy and Hall processes on the other, yet our conclusion is that the differences are not such as amount to invention.

With the patents of Conboy, Hall, Allen, and Salathe before him, a mechanic skilled in the art would, we think, readily have had suggested to him and could easily have made the changes necessary to produce the Woodley process.

It follows that the Woodley patent is invalid for lack of invention. King Ventilating Co. v. St. James Ventilating Co., 26 F.(2d) 357 (C. C. A. 8); City of St. Louis v. Prendergast, 29 F.(2d) 188 (C. C. A. 8); Tropic-Aire, Inc., v. Sears, Roebuck & Co., 44 F.(2d) 580 (C. C. A. 8). A like conclusion has been heretofore reached in the First Circuit in Richardson Co. v. Hood Rubber Co. (C. C. A.) 22 F.(2d) 501; and while we have given to the decision in that case the deference to which it is entitled as coming from a distinguished court, yet, as in duty bound, we have accorded to the case at bar an independent consideration.

In view of the foregoing holding, it becomes unnecessary to discuss the question of infringement.

The decree is affirmed.