EDISON et al. v. ALSEN'S AMERICAN PORTLAND CEMENT WORKS.

(Circuit Court of Appeals, Second Circuit. December 15, 1914.)

No. 15.

PATENTS ☞328—INVENTION—CEMENT BURNING APPARATUS.

The Edison patent, No. 802,631, for an apparatus for burning Portland cement clinker, *held* void for lack of invention.

Appeal from the District Court of the United States for the Southern District of New York.

On appeal from a final decree of the District Court for the Southern District of New York, dismissing the bill in an infringement suit based upon letters patent No. 802,631, for an apparatus for burning Portland cement clinker, granted to Thomas A. Edison, October 24, 1905. The only claims now relied upon are 2, 5, 6, and 8. Claims 1, 7, and 11, which were relied on in the District Court, have been withdrawn. The opinion of the District Judge is reported in 208 Fed. 20.

Charles Neave, of New York City, for appellants.

Thomas F. Sheridan, of Chicago, Ill., J. Edgar Bull, of New York City, and Carl A. Richmond, of Chicago, Ill., for appellee.

Before LACOMBE, COXE, and WARD, Circuit Judges.

COXE, Circuit Judge. At the time application was filed, December 5, 1902, Portland cement was produced by burning a mixture of cement, rock and limestone in long rotary kilns lined with fire-brick and maintained at a slight angle, the heat being produced by the combustion of pulverized coal. A stack was connected at the upper end of the kiln to permit the escape of smoke. These kilns for some years prior to 1902 had been of the standard length of about 60 feet with an internal diameter of about 5 feet. The patentee admits that longer kilns had been suggested for the dry process but he asserts:

"I am not aware that such kilns have been practically utilized or any advantages discovered therewith over the standard 60-foot kilns."

The specification contains seven pages of description, but it is thought that the only important improvement suggested or claimed is the lengthening of the kiln without proportionately increasing its diameter. This is the idea which is constantly asserting itself in the specification and the claims.

Claim 2 will sufficiently describe the alleged invention. It is as follows:

"A cement-burning apparatus for dry material, comprising a tubular kiln, upward of one hundred feet in length and more than twelve times the internal diameter thereof, means for rotating the same, means for creating a combustion zone within the kiln near its lower end, and means for introducing cement material into the kiln at its upper end, substantially as set forth."

The kiln must be upward of 100 feet in length and, as Judge Holt points out, a kiln half an inch more than 100 feet would infringe and a kiln half an inch less than 100 feet would not infringe. The record shows kilns in the prior art over 100 feet in length and, as before stated, the patentee admits that kilns over 60 feet have been suggested though he is "not aware that such kilns have been practically utilized."

There is a dispute on the facts regarding these prior kilns and therefore we find it unnecessary to discuss them for, in the view we take of the situation, it may be conceded that Edison was the first to make a kiln over one hundred feet in length. The question is, Did it require an exercise of the inventive faculties to do this. Was it not rather an improvement due to the natural evolution of the art? It was not an improvement which a poor man could attempt. The experiments and the structures necessary to make the experiments successfully would involve a considerable outlay of money which would make it impossible for him to test his theories, no matter how implicitly he might believe in them. The skilled mechanic, with years of experience and unlimited resources at his command, could make the experiments and enlarge the kiln to meet the increasing demand for Portland cement.

The great demand for this product in recent years, which has steadily increased, created the necessity for larger kilns. As this demand

grew, the kilns were increased in length from 15 feet by progressive additions until at the date of the patent there were many kilns 60 feet in length. No one pretended that it required invention to do this. It was a mere matter of construction. In the same way the stone crushers were made larger as the demand for good roads became insistent, the oil tanks increased in size with the increase of petroleum and elevator bins grew larger with the increased traffic in corn and wheat. We are not at all convinced that any better or different result is reached by the long kiln than by the short kiln. They both produce equally good cement and the only real difference is the one which occurs as a matter of course, viz., that a large machine will produce more product than a small one. But it did not require invention to make the machine longer or larger so long as the only result is to produce a larger output. As pointed out by the trial judge, if mere elongation be patentable, then each builder as he added an additional foot to the original 15-foot machine would have been entitled to a patent. But it is argued that a better result is obtained by the patented kiln because the increased distance from the upper end of the kiln down to the point of the combustion enabled the mixture in the calcining zone to be subjected to a longer application of heat, thus driving out the carbon dioxide before the combustion zone is reached. We agree with Judge Holt in thinking that the relative operation of these zones depends largely upon the method adopted by the operator. Judge Holt says:

"The evidence satisfies me that in kilns of all sizes whether the action in the calcining zone overlaps the action in the combustion zone depends very largely upon the operation of the kiln. The operator can introduce at will a longer or shorter blast; he can revolve the kiln more slowly or more rapidly; he can feed into the kiln a larger or smaller amount of cement material; and it depends largely upon the manner in which the kiln is operated whether the calcining process is substantially completed before the material is subjected to the heat in the combustion zone, and the best results obtained generally."

It is true that Edison made a longer step than any one person before him, but others were bound to reach the advanced position although more time might have elapsed before that consummation was reached.

In short, we are convinced that the enlargement of the kiln was sure to come sooner or later, as the growth of the business demanded. With the increase in length would come the proper increase in diameter and the other necessary changes which any skilled mechanic would know how to make. We find it unnecessary to add further to the opinion of the District Judge.

The decree is affirmed with costs.