### THOMSON SPOT WELDER CO. v. FORD MOTOR CO.

(Circuit Court of Appeals, Sixth Circuit. June 28, 1922.)

No. 3555.

**1. Patents ⊚⇒328—1,046,066, relatng to spot-welding, held invalid.**

The Harmatta patent, No. 1,046,066, for process of electric spot-welding and for the product of such process, *held* invalid for want of invention, in view of the prior art.

**2. Patents ⊚⇒66—Welding and soldering held analogous arts.**

As respects invention, the art of soldering is analogous to that of welding.

**3. Patents ⊚⇒26(1)—Combination must involve invention.**

Although invention is not necessarily negatived by the fact that each element of the combination is old, the combination itself must involve invention, in view of the prior art.

**4. Patents ⊚⇒112(4)—Award of priority weakened, when not based on the merits.**

That an award of priority by the Patent Office was not based on an adjudication on the merits, but on the failure of the junior party to take testimony in support of his claim of priority, tends to weaken its force.

**5. Patents ⊚⇒91(4)—Unsuccessful or abandoned experiment held to discredit claim of invention by another.**

Assuming that the successful joining of two pieces of lapped metal at isolated spots by means of a so-called butt-welding machine were not considered by the inventor a commercially practical experiment, and did not amount to a reduction to practice, or became an abandoned experiment, it strongly discredited the claim of invention on the part of one claiming to have subsequently invented a process for welding in spots by means of pin electrodes or otherwise.

Denison, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the Eastern District of Michigan; Arthur J. Tuttle, Judge.

Suit by the Thomson Spot Welder Company against the Ford Motor Company. From a decree for defendant (268 Fed. 836), plaintiff appeals. Affirmed.

⊚⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Frederick P. Fish, of Boston, Mass. (J. L. Stackpole and H. F. Lyman, both of Boston, Mass., on the brief), for appellant.

Melville Church, of Washington, D. C. (Barthel, Flanders & Barthel, of Detroit, Mich., A. S. Pattison, of Washington, D. C., and O. F. Barthel, of Detroit, Mich., on the brief), for appellee.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

KNAPPEN, Circuit Judge. Suit for infringement of United States patent No. 1,046,066, December 3, 1912, to Johann Harmatta, assignor to Thomson Electric Welding Company, which is the predecessor of plaintiff company. The invention relates to that branch of electric resistance welding known as spot welding, by which two sheets of metal are welded together in spots, as a substitute for riveting. Generally speaking, the welding is accomplished by the application of pressure and heating current, localized in spots on the opposite plane facts of the two metal sheets. Specifically, two pointed electrodes are applied to the opposite faces of the sheets, the electrode which feeds the electricity into the work and heats the metal to the welding point being caused to exert the pressure required to accomplish the weld. The specification states that—

"The necessary pressure may be exerted at the place of welding by the aid of any of those technical means which are suitable for producing or transmitting pressure—e. g., with a press either direct or by means of indirect transmission by levers; or it may be by means of simple hand levers, that is to say, by means of direct or indirect manual power, or by other means."

The 21 claims of the patent relate some to the process, the others to the product. Plaintiff relies on claims 3, 8, 12, and 17 as typical. They are printed in the margin.[1] The prominent defenses are antici-

[1] "3. The herein described method of uniting two pieces of metal, consisting in pressing them together while passing a heating electric current from one to the other and localizing the flow of current and the heating throughout the operation in a spot or spots, of circumscribed or limited area as compared with the area of the immediately opposed surfaces so as to limit the union of the pieces to a spot or spots."

"8. The method of electrically welding two plates or sheets of metal together face to face between electrodes, consisting in restricting the area of contact of an electrode with said plates to a spot, passing a heating electric current from said electrode to the co-operating electrode through said spot to heat the work to welding temperature and applying pressure to the work in line with said spot to effect a welding of one plate to the other."

"12. The method of electrically welding two pieces of sheet metal to one another, consisting in pressing the sheets together by pressure applied and localized in a distinct well-defined point or spot on the rear surface of a sheet while passing an electric current through them in the line of the pressure, thereby localizing the path of the heating current from one to the other of the meeting surfaces of the sheets to cause the said sheets to be heated to welding temperature by the electric resistance of the work at said spot, and applying pressure localized over said spot whereby the pieces are welded together at a distinct well-defined spot in their meeting surfaces answering the purpose of a rivet."

"17. Metal plates fastened together by a number of distinct or isolated welds on their meeting surfaces and in spots comprising meeting portions of the metal plates, the backs of said plates being practically unaltered in their metallic condition and the spots on the meeting surfaces being separated from one another by distinct unwelded areas."

pation, lack of invention, prior public use, and estoppel. The District Court found each of these defenses established and dismissed the bill. 268 Fed. 836. Noninfringement is pleaded but not urged.

The patent has been adjudicated in but one other suit, viz., Thomson Electric Welding Co. (plaintiff's predecessor) v. Barney & Berry, in the First Circuit, decided in 1915. In that case Circuit Judge Dodge, who presided in the District Court, held the patent void for lack of invention. The Circuit Court of Appeals held that the patent was not anticipated and that it involved invention, and reversed the judgment of the District Court. The opinions of both the District Court and of the Circuit Court of Appeals are reported in 227 Fed. 428 et seq., 142 C. C. A. 124.

[1] The art of electric resistance welding was old and far advanced in 1903, when the Harmatta patent was applied for. Prof. Elihu Thomson, the head of plaintiff company and of its predecessor, was a pioneer in that art. In 1886 he obtained process and apparatus patents respectively (Nos. 347,140 and 347,141) for so-called butt welding, which involved the uniting of the abutting ends of metal wires, bars, etc., by applying heat at the joint and the adjacent surfaces by means of electrodes, and pressing the two pieces together when heated to welding temperature. There was here true resistance welding, with pressure of the parts involved, although the electrode did not exert the welding pressure. In 1889 Thomson obtained a patent (No. 396,015) for electric riveting, which involved the heating of the rivet when in place by means of a current passed through it by the use of electrodes, under pressure thereon, the effect being not only to swage the rivet and weld it to the adjoining metal, but apparently (when desired) to weld together, in part at least, the portions of the plates immediately adjoining the rivet.

In 1891 Thomson obtained a patent (No. 444,928) for what is called lap-welding. While the specification states that the invention is specially adapted to the welding of the overlapped edges of plates, it is not so limited, but expressly includes "welding together strips, sheets, plates, or bars of metal where it is desirable to form a joint of considerable length." According to the specification, "the surfaces to be welded are pressed together to form a union," the work being fed in the longitudinal direction of the joint "through suitable pressure devices [preferably roller electrodes], the work being properly arranged, so that the pressure devices will press the surfaces to be welded together and simultaneously passing the electric current through the work *at the point of pressure.*" The electrodes were employed to exert the welding pressure. The specification further states that "as the work is passed through such rolls with a continuous motion *each point,* as it comes between the rolls, is heated and the surfaces pressed together," etc. By way of further description of one of the figures it is said that—

"The electric current being now turned on as it passes from one roller to the other and across the point of pressure will heat the work to the welding temperature * * * after which the screw can be given a few more turns to effect a solid union. The work *having been thus started,* may now be mov-

ed along through or between the rolls so as to bring successive parts of the joint into position to be pressed and heated at the same time." [2]

In 1893 Thomson obtained a patent (No. 496,019) relating particularly to soldering sheet metal pieces flatwise, either by the use of solder or (when applied to tin plates) by melting the tin sufficiently to establish union thereby. The electrodes, in the form of clamps or otherwise, served not only to supply the necessary heat, but to exert sufficient pressure upon the overlapped sheets to effect their union. A roller electrode is disclosed, performing the double function of heating and pressing, and having its periphery corrugated or grooved. As stated in the specification:

"The rollers exert pressure while the current heats the thin metal pieces at successive points between the rollers."

This was, to say the least, electric resistance spot soldering.

In 1897 Robinson received a patent (No. 574,942) on so-called projection welding, as specially applied to the welding of a splice bar to the web of a railroad rail, the splice bar having upon its inner face a number of projections which by the application of the heating current are fused, and by pressure made to form welds between the projections on the bar and the fused opposing portions of the rail. Kleinschmidt, in 1898, took out a patent (No. 616,436) for a similar process, and by methods not essentially unlike those of Robinson.

Whether or not the Thomson so-called lap-welding invention should be regarded as an absolute anticipation of the Harmatta patent, we think the state of the art to which we have referred left no room for invention in Harmatta. Thomson's lap-welding patent is criticized as not plane-face welding, much less spot-welding. We see no distinction upon principle between plane-face welding and lap-welding; the former certainly embraces the latter. If Thomson's roller electrode device was capable of welding a line or seam in a metal lap joint, it was readily adaptable to line-welding together coterminous plane-face plates. Harmatta's original application (made in ignorance of Thomson) disclosed roller electrodes broadly enough to include that very use. We think Thomson's lap-welding invention was in essence a welding in points. In fact, his line seam was merely a succession of adjoining points. The specification repeatedly speaks of the "point of pressure," says that "each point as it comes between the rolls is heated," etc.; "the current passes across the point of pressure." It satisfactorily appears that, although Thomson's roller electrodes in the form shown in the patent were not practicably adapted to commercial spot-welding as disclosed by the Harmatta patent, they could readily be made to do such spot-welding by the use of suitable projections upon the face of the rolls (Thomson later did spot-soldering by the use of such projections); and assuming that pin electrodes were essential to successful commercial spot-welding, that form of electrodes was old, as illustrated by Thomson's electric soldering patent referred to.

[2] All italics in this opinion are ours.

[2] In our opinion the art of soldering is analogous to that of welding. The difference in degree of heat generated by the electric resistance, as required in welding and soldering respectively, is not sufficient to defeat analogy. By the use of enough more heat Thomson's soldering device could readily have effected spot-welding. Such analogy seems recognized in the Benardos patent, whose invention is applied "to welding thin metal sheets and rods, and the soldering of metals as well as their hardening and annealing," and in the Lemp patent (No. 553,932) issued to plaintiff's predecessor, which provides for "welding, soldering, cementing, or similar operations." No essential difference in principle between heating at points and heating in spots is apparent. Projection welding partakes, though not in so pronounced a sense, of the nature of spot-welding.

[3] We agree with Judge Dodge that Harmatta's idea of "making his electric welds small in area rather than large in comparison with the areas of the opposed surface to be joined and isolating them, so as to leave each surrounded by a comparatively large area of unwelded surface," does not involve invention in view of the prior art. In other words, given the desire for a welding in spots, naturally enough suggested by the prior art and by its commercial development, we think Harmatta's specific application of the principles of that prior art involved only the skill of the expert mechanic. Not only every principle, but every electric and mechanical process, involved in the Harmatta claims, was well known in the prior or directly analogous arts, or in mechanical arts generally. We cannot think, in view of the prior art, that invention is to be found in the considerations, separately or collectively, that in Harmatta no bodily movement of the sheets is required, that the current is localized and pressure exerted solely by the electrodes, or by the difference in the form of the electrodes, or by the difference in amount of extruded metal, as compared with some of the earlier applications of resistance welding. Although invention is not necessarily negatived by the fact that each element of the combination is old, the question of fact whether the combination itself involves invention in view of the prior art is always present.

Our conclusion of noninvention, based upon a review of the prior art, is materially strengthened by the serious doubt whether Harmatta thought, when he filed his patent application, that he had patentably invented anything by the disclosure of spot-welding, as a process or product distinct from point-welding or line-welding, as well as by the fact that others previous to the grant to Harmatta, and apparently in ignorance of Harmatta's claimed invention, successfully practiced the art of spot-welding. Harmatta's application was filed December 3, 1903. For "continuous welding," the specification disclosed roller electrodes for exerting pressure "whereby the advancing series of single points of the seam to be welded is united to a whole with a minimum amount of current." It also showed pin-shaped electrodes, "which may be adapted to work on the smallest possible surface of contact," which could be used for the "welding of two metal sheets of equal thickness, intermittently or at certain spots only," and by the

use of which, as illustrated, "a small, round, very sharply defined place of welding is caused, which perfectly answers the purposes of a rivet."

But none of the claims contain in terms any reference to spot-welding. The first claim related to the process of electric welding "consisting in employing the electrodes, not only to conduct the current to the objects being welded, but also to exert a regulable pressure on the same"; the second, to an apparatus for electric welding "comprising two electrodes between which the objects to be welded are introduced and means whereby one of the electrodes can be approached to and receded from the other"; the third, to an "electrode apparatus for electric welding, comprising two roller electrodes between which the objects to be welded are introduced, and means for pressing the electrodes to the work"; the fourth, to an "electrode apparatus for electric welding, comprising two roller electrodes between which the objects to be welded are introduced, and means for rotating one or both of the rollers for the purpose of advancing the work in its path between the electrodes." Each of the four claims would literally read upon Thomson's lap-welding or roller-electrode device. The natural inference would be that Harmatta regarded the principle employed in roller-electrode and pin-electrode welding as the same. The Patent Office found nothing patentable in Harmatta's application until six years later.

[4] The patent issued nine years after the application was filed, and after numerous vicissitudes and amendments (including the entire elimination of the roller-electrode feature), and after the application had been placed in interference with the claims of Adolph Rietzel, to whom a patent had previously been issued on July 20, 1909; Rietzel's claims, as allowed, being adopted by Harmatta at the suggestion of the Patent Office for purposes of interference. Rietzel was the engineer, superintendent, and general manager of plaintiff's predecessor. His application was filed February 24, 1905, and presumably in ignorance of Harmatta's application or claimed invention. From the beginning Rietzel's application was owned by plaintiff's predecessor. The interference was declared in favor of Harmatta, for Rietzel's failure, as the junior party to the interference, to take testimony in support of his claim of priority; plaintiff's predecessor at the time owning both the Harmatta application and the Rietzel patent. What we have said is not intended as a criticism of plaintiff's predecessor, or of counsel, or of the Patent Office. But the fact that the award of priority was not based upon an adjudication on the merits tends to weaken its force.

It, however, convincingly appears in the record before us that in 1898 (and about five years before Harmatta's application) Rietzel, while in the employ of plaintiff's predecessor, in several instances successfully joined two pieces of lapped metal at isolated spots by means of a Thomson butt-welding machine; the sheets of metal being united by pressing them together and at the same time passing the heating current from one electrode (or so-called contact) to the opposite electrode, at the selected spot on the meeting surface of the plates,

the spots being restricted in area, so as to leave well-defined and comparatively extensive areas of no-union completely surrounding the spots—one of the electrodes or contacts used being of standard size and form, the other being reduced by cutting down to a diameter of about three-eighths of an inch.

[5] Assuming, for the purposes, at least, of this opinion, the correctness of the contention that these spot welds, while satisfactory and successful, were not considered by Rietzel a commercially practical experiment, and did not amount to a reduction to practice within the meaning of the patent law, or became an abandoned experiment, Rietzel's experience strongly discredits inventive quality in what Harmatta did several years later, including his disclosure of the use of pin-electrodes.

The fact also appears in this record that at various times, ranging from two years to five or six years, before the issue of the Harmatta patent, and apparently in ignorance of his asserted invention, various manufacturers put out or used spot-welding machines with commercial success. Some of these uses antedated the issue of the Rietzel patent. These experiences also tend to discredit invention in Harmatta.

It follows, in our opinion, from what has been said, that the effect of the great commercial success of the Harmatta invention in the hands of plaintiff is entitled to little weight upon the question of invention, even were that question otherwise in doubt, which we think it is not.

Our conclusion of noninvention makes it unnecessary to consider the alleged McBerty prior use, the defense of equitable estoppel asserted against plaintiff, the standing of the De Ferranti patent, or any of the other defenses presented.

The decree of the District Court is affirmed.

DENISON, Circuit Judge, dissents.