## HAYES PUMP & PLANTER CO. v. FRIEND MFG. CO.

(Circuit Court of Appeals, Second Circuit.
June 1, 1925.)

No. 349.

1. **Patents** ⊜⟿328—962,946, for nozzle, held void for anticipation.

The Cushman patent, No. 962,946, for a nozzle, *held* invalid for anticipation in the prior art.

2. **Patents** ⊜⟿20—Change of shape or form not invention.

It is not enough to constitute patentable invention that in the shape or form in which the device is produced it was not known before.

Appeal from the District Court of the United States for the Western District of New York.

In Equity. Suit by the Hayes Pump & Planter Company against the Friend Manufacturing Company for infringement of patent No. 962,946. Decree for plaintiff. Defendant appeals. Reversed.

Drury W. Cooper, of New York City, and J. William Ellis, of Buffalo, N. Y., for appellant.

Samuel W. Banning, of Chicago, Ill. (Charles W. Parker, Felix E. Prochnow, and Barton A. Bean, Jr., all of Buffalo, N. Y., of counsel), for appellee.

Before ROGERS, MANTON, and HAND, Circuit Judges.

MANTON, Circuit Judge. [1] This suit is for infringement of a patent for a nozzle. The first, third, and fourth claims are involved. It is claimed that appellant's spray guns embody the construction and novelty of appellee's patent. The inventor says that the invention relates to spray nozzles, and has for its principal object a nozzle of simple economic construction through which liquid may be forced and distributed in a finely diffused spray. Another object is to provide a nozzle having a minimum number of parts, so constructed that it might be readily and adjustably changed from a spray to a direct jet nozzle. A finely diffused spray is produced by causing the liquid, instead of passing straight through the nozzle, to enter at an angle from a side helical passage. Liquid entering in this way whirls within the body of the nozzle, so that when it emerges from the tip of the nozzle it is not only moving forward, but is also swirling, so that the particles tend to move laterally, as well as forward, and fly away from each other.

This produces a conical spray, or, as it is termed, a finely diffused spray. By reason of such helical passage in the combination with the chamber, the whirling action of the liquid is produced, and the spray mentioned as the principal object of the patent is produced.

The patent shows the helical passage, and what is termed an eddy chamber formed between the plug and the cap. Claim 1, provides, in a spraying nozzle, a body portion having a tortuous channel and an axial passage, means removably inserted in the axial passage, and a cap under the body having a central discharge opening. Claim 3 differs from claim 1, in that it includes as an element a boss projecting from the body and threaded to receive a conduit, and claim 4 differs from claim 1, in that it calls for a disk arranged in front of the body portion and provided for a central opening. It includes a packing washer between the disk and the body portion. It thus appears that the difference between claims 3 and 4 and claim 1 relate to the threaded boss and the construction of the eddy chamber comprising the disk with its discharge orifice and packing washer.

This patent is found in a crowded art. Reliance for its validity is placed largely in the fact that it has an eddy chamber, and it is claimed to be used principally for an orchard sprayer. The District Judge said: "On reading the specifications in connection with the claims in issue, I think the latter are limited to an orchard spraying nozzle, for reference in the specifications to a finely diffused spray and to clogging the nozzle from corrosion seems to imply the use in the nozzle of a corrosive mixture only, characteristics not present in ordinary hose or water nozzles." And he distinguishes the invention from the patents of the prior art by holding that there was no eddy chamber and no central outlet in the cap or top piece, and said that without the latter embodiment the result obtained in producing the diffused spray could not be obtained.

It is argued in the brief of counsel that the thing that makes patentable the appellee's device is the structural requirement in respect to the provision of an eddy chamber and the means in the claims which are directed to the features of construction which, in combination, afforded an eddy chamber. We think a nozzle which is used for lawn spraying, as found in the prior art, may well be considered in the art of orchard spraying, even though in lawn spraying water only is used, and in orchard spray-

ing insecticide solutions. Water sprayed through nozzles for lawns is substantially like liquid watery insecticide solutions used in spraying orchards. The clogging or corrosion referred to by the appellee does not depend upon the construction of the spraying device, but rather upon the preparation of the spraying solution. When the spraying device becomes dirty, it can be sufficiently disassembled to clean it. There is more or less sediment in waters that are used that would require the cleaning of nozzles, as in the case of liquid watery insecticides.

There are patents of the prior art which indicate that there was nothing novel in appellee's accomplishment, nor was there a new result obtained by the use of appellee's nozzle. The Parker patent No. 356,372 of the prior art shows a nozzle producing a very fine, wide spray or a more contracted direct passage. The nozzle is provided with lateral helical passages, in which the liquid is given a whirling motion. When the whirling motion alone is desired to give a fine spray, the central passage is closed by a cylindrical member, which then leaves only the lateral or helical passages for the water to pass through. Whenever it is desired to have the character of the spray more powerful, the body of the nozzle is turned, and the cylindrical member is backed out from the central passage. This leaves a clean central passage in addition to the helical side passages, in the same manner as when the screw plug is removed from the patent in suit. This produces a change from one type of spray to another, and can be made at any moment when the nozzle is in use, by rotating the body of the nozzle. Intermediate positions may be created, so as to produce an intermediate type of spray. When the plug or cylindrical member is inserted, a whirling motion is given to the spray, and it is widely disbursed, and when the plug is partly removed from the Parker nozzle, some of the liquid passes directly through the central passage, so that the column of the spray is more contracted and driven to a greater distance. If the plug is taken out entirely, the spray will be ejected further than when it is partly out.

The difference between the patents is that the patent in suit in construction differs from the Parker, in that, when the screw of the patent in suit construction is only partly out, there would be no change in the form of the spray. The screw must be in place to close the opening, or it must be entirely removed from it. If it is partly removed, it will still close the opening, so that no change could be made in the operation of the nozzle. Demonstrations made in the use of this nozzle show that the spray is practically the same as that thrown by the spray guns of the appellant. An eddy chamber is described as in recess or space or chamber in which a solution rotates after leaving the feeder apertures or tortuous channels. Parker substantially has this. In the German patent, No. 71,453, the body of the nozzle is provided with side passages, which enter at an angle, so as to cause a whirling motion of the liquid in the chamber of the nozzle, and it is also provided with a central opening, through which the liquid can enter the whirling chamber direct. The liquid may enter the side passages into the central whirling chamber of the nozzle tangentially, so that it is caused to whirl within the chamber before it issues from the tip of the nozzle.

Much is made by the appellee in argument of the fact that water is caused to enter the whirling chamber or eddy chamber at right angles. The central or axial passage permits a direct stream of liquid to enter and mingle with the whirling liquid, so that a result is brought about similar to that produced by the patent in suit in the appellee's nozzle when the screw plug has been removed. This German patent does not show a plug for closing the central passage, but the specifications state the central jet may be eliminated by closing the opening. The idea of an eddy chamber is present in this German patent. The eddy chamber of Hull's 1907 patent and the eddy chamber of the patent in suit are not formed precisely the same in every detail as is the eddy chamber of the Parker and German patents. However, the tapered nozzle of the German and Parker patents are identical, having at each of the outlets a restricted opening, and being provided with the helical passages and the central axial passage, which necessarily produces the whirling, atomizing eddy reaction of the liquid forced through them.

The appellee's device is a nozzle, and the appellant's device is a spray gun. The appellant's spray gun has a removable plug, which is constructed as shown and described in appellee's patent; but appellee's plug is physically taken out of the conduit, and out of the axial passage, and later inserted therein with no intermediate positions, allowing a partial control of the liquid, while in the appellant's spray gun the plug is always in the conduit, either wholly or partially inserted in the axial passage or entirely out of the passage, but still within the conduit, and, as

shown by the exhibit, the appellant's spray guns have an elongated conduit, constructed so as to form a handle or rod by means of which the gun is manipulated; also the central plug is elongated, so that it can be easily retracted. The set screws of the appellee's device have been modified to assume the form of a spiral track or tread, which cooperated with the plug to advance or retract the plug, and the helical passage of the patent in suit assumes the form of a plurality of such passages. The axial passage is found in both the German patents as well as in the Parker, and a screw has been placed into it by the appellee.

[2] We do not think it patentable to close with a plug the axial opening which is similar to that shown in the German patent. The patent in suit shows a combination of axial opening and the atomizing by whirling injection. Both of these features are found in the prior art. To produce a patentable invention requires the discovery of some new and useful art, machine, manufacture, or composition of matter, or some new and useful improvement thereof, and it is not enough that a thing shall be new in the sense that, in the shape or form in which it it produced, it shall not have been known before. Hill v. Wooster, 132 U. S. 693, 10 S. Ct. 228, 33 L. Ed. 502; Penn. R. R. Co. v. Truck Co., 110 U. S. 194, 4 S. Ct. 220, 28 L. Ed. 222.

We think the patent in suit was anticipated by the prior art. Therefore the decree will be reversed.

Decree reversed.