## In re RICHTER.
### Patent Appeal No. 2834.

Court of Customs and Patent Appeals.
Dec. 7, 1931.

Wright, Brown, Quinby & May, of Boston, Mass. (N. P. Wharton, of Boston, Mass., and Arthur L. Bryant, of Washington, D. C., of counsel), for appellant.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GARRETT, Associate Judge.

Appellant seeks patent on "Improvements in Wood Pulp and Process of Producing the Same." There are eight claims, Nos. 2–8, inclusive, and No. 11. Their rejection by the examiner was affirmed by the Board of Appeals of the United States Patent Office, and the instant appeal is from the decision of the latter.

Claims 2, 3, and 11 are for the process, and the others are for the article.

We quote Nos. 2, 4, and 8:

"2. A process of producing wood pulp, which comprises the digestion of the raw cellulosic material in an acid sulphite cooking liquor, in which the free $SO_2$ and combined $SO_2$ are in solution of approximately equal proportions of at least 3% to 4% each, under conditions of high temperature and pressure."

"4. Pulp derived from wood and characterized by the fact that when formed in a sheet in unbeaten condition it is light colored, long in fiber length and shiny and has a decided rattle when shaken."

"8. Sulphite pulp having a total cellulose content of 85% to 93% and a pentosan content of 5.0% to 7.5%."

The references are as follows: Ekman (Reissue), 10131, June 6, 1882; Catlin, 366153, July 5, 1887; Marusawa, 1244525, Oct. 30, 1917; Chemistry of Paper Making by Griffin and Little.

In the brief for appellant, it is said: "In producing sulphite pulp, it is customary to charge a digester with chipped wood and sufficient cooking liquor of a definite strength to submerse the wood. The digester is then closed and its contents are heated to conditions of high temperature and pressure, until the liquor has dissolved the encrusting or cementitious content of the wood to liberate the wood fibers as a pulp. The digester is then "blown" or discharged under pressure, and the discharged pulp is washed free of entrained spent cooking liquor, and, after screening, is delivered to the bleachery, wherein it is converted to the pure white color desired for papermaking."

The brief states further: "The commercial sulphite pulp industry has heretofore been based on the use of acid sulphite cooking liquors containing about 1% combined $SO_2$, and free $SO_2$ greatly in excess of the combined $SO_2$. Indeed, a combined $SO_2$ content of about 1% in the liquor has been regarded as being all that is necessary to cause pulping of wood."

It is then stated that appellant has made the discovery that, by pulping the wood "in an acid sulphite cooking liquor containing in solution combined and free $SO_2$ in approximately equal proportions of at least 3% to 4%" (that is, as we understand it, 3 per cent. to 4 per cent. of each of the combined and free $SO_2$), a pulp is produced lighter in color than the pulp produced by the former process, and capable of forming papers of more than double the strength of the papers formed from the pulp produced by the former process.

The pulp so formed by appellant's process is claimed to be, in its unbeaten condition, long in fiber and shiny, and to have a decided rattle when shaken. It is said to have a cellulose content of 85 per cent. to 93 per cent., and a pentosan content of 5.0 per cent. to 7.5 per cent.

Claim 8 specifically names a product of this content.

The disclosures of the references show, where specific statement as to percentages is made, a strength ranging from 2 per cent. to 2.5 per cent. for each of the cooking liquor constituents in question.

The Catlin specification states: "The invention is also not restricted to any particular proportions. They may be varied according to the judgment or skill of the paper maker."

The process claims were rejected by the tribunals of the Patent Office upon the ground that the difference in strength of appellant's solution from that specified in the references is a mere matter of degree and not patentable. The product claims were rejected upon the ground that the process claims, not being patentable, neither is the product thereof, and upon the further ground that the claims for the product are defined in indefinite and indeterminate terms.

The argument of appellant is that he has entered a new field, so to speak, or adopted a new range of percentages in the formation of cooking liquor for wood pulping, and that this amounts to invention.

The examiner's statement in answer to the appeal is quite an elaborate one, and discusses the several issues in detail, analyzing the claims and the references comprehensively, and the opinion of the board also covers the technical grounds in an ample manner. It is not deemed necessary to repeat these respective reviews here.

There are authorities, such as Minerals Separation, Limited, et al. v. Hyde, 242 U. S. 261, 37 S. Ct. 82, 61 L. Ed. 286, supporting the principle that a change in the proportions of agents in a combination analogous to the cooking liquor here involved may at times be inventive, but in all such cases the changed proportions must be critical as compared with the proportions used in prior processes, producing a difference of kind rather than of degree.

This court said, in the case of In re Williams, 36 F.(2d) 436, 438, 17 C. C. P. A. (Patents) 718, 722: "It is a settled principle of law that a mere carrying forward of an original patented conception involving only change of form, proportions, or degree, or the substitution of equivalents doing the same thing as the original invention, by substantially the same means, is not such an invention as will sustain a patent, even though the changes of the kind may produce better results than prior inventions. In re Iwan, 17 App. D. C. 566; In re Marshutz, 13 App. D. C. 228; Smith v. Nichols, 21 Wall. 112, 119, 22 L. Ed. 566."

The quotation from the Catlin patent, supra, is conclusive, we think, of the fact that Catlin taught the art the possibility of using varying proportions in the formation of the cooking liquor, and we are not impressed that appellant's argument, to the effect that one practicing the teaching of Catlin would naturally use cooking liquor of the "strength * * * to which he [the user] was accustomed," is sound.

It seems to us rather that the words, "may be varied according to the judgment or skill of the paper maker," clearly imply and invite a possible change of range in percentages. Certain of the reasoning in the case of In re Pilling, 44 F.(2d) 878, 18 C. C. P. A. (Patents) 703 is applicable to the case at bar.

We feel that the process claims were properly disallowed.

We also concur with the tribunals of the Patent Office in the conclusion that the product claims are not patentable.

While there may be instances in which a product may be patentable where the method of its production is not, and vice versa, nevertheless we regard it as sound law to hold that where, as seems to be the case here, the process claimed will produce only the product claimed, and the claimed product can only be produced by the claimed process, the process not being patentable, the product cannot be. In such a case, they are so interrelated as that there is not that independence between them which renders the product patentable if the process is not patentable.

But independent of this ground, with the possible exception of claim 8, all the product claims, as held by the tribunals of the Patent Office, are expressed in indefinite and indeterminate language and do not, in our opinion, meet the requirements of section 4888, Rev. St., 35 USCA § 33. Steel Wheel Corporation v. B. F. Goodrich Rubber Co. (D. C.) 27 F.(2d) 427.

The product which is claimed in claim 8 is so closely approximated by the product of Marusawa's example 1, as that the latter was properly regarded by the tribunals of the Patent Office as an anticipation of the former.

We concur in the holding of the Board of Appeals of the Patent Office, and its decision is affirmed.

Affirmed.