## MIDLAND FLOUR MILLING CO. v. BOBBITT.

## BOBBITT v. MIDLAND FLOUR MILLING CO.

### Nos. 9722, 9742.

Circuit Court of Appeals, Eighth Circuit.
March 23, 1934.

Henry M. Huxley, of Chicago, Ill. (M. L. Alden, of Kansas City, Kan., and Edward S. Rogers, and James H. Rogers, both of Chicago, Ill., on the brief), for Midland Flour Milling Company.

Bruce S. Elliott, of St. Louis, Mo., and William L. Vandeventer, of Kansas City, Mo., for Robert L. Bobbitt.

Before GARDNER and WOODROUGH, Circuit Judges, and MARTINEAU, District Judge.

GARDNER, Circuit Judge.

This is a patent suit in which Robert L. Bobbitt, as plaintiff below, sought to enjoin the Midland Flour Milling Company, defendant, charging infringement of claims 3 and 4 of Letters Patent No. 1,354,878, dated May 5, 1920, for an improvement in dust collectors. The application for patent was filed November 27, 1914.

The patent relates to a type of dust collector in which dust-laden air is tangentially introduced into the upper cylindrical portion of a chamber, the lower part of which is in the form of a cone, the dust being discharged through an opening near the apex of the cone and the purified air being discharged upwardly through an opening in the center of the top of the collector. Patentability is bottomed on the claim that plaintiff introduced into the art as it then existed the feature of having the total height of the dust collector about three and a half times its greatest diameter. It is recited in the patent that:

"This type of dust collector is well known and in very general use. Such dust collectors are in all cases, so far as I am aware, of relatively short height compared with their width, their total height ranging from one-fourth to one-half greater than the greatest diameter, which, of course, is at the top."

Claims 3 and 4, which are the only ones involved in this suit, read as follows:

"3. A separating chamber having a tangential inlet for dust-laden air and adapted to confine a whirling body of air and dust, an opening at one end thereof for purified air, and a relatively small centrally disposed opening at the other end for dust, said chamber having a tapering portion of the shape of a cone whose altitude is substantially three times the diameter of its base, said dust outlet opening being adjacent to the apex of said cone.

"4. A separating chamber having a cylindrical portion, a tangential inlet for dust-laden air in said cylindrical portion, an outlet for purified air, an outlet for dust, and a tapering portion of the shape of a cone having an altitude equal to substantially three times the diameter of its base and having a smooth uninterrupted inner surface, said dust outlet opening being located adjacent to the apex of said cone."

The bill of complaint is in conventional form, and the answer in effect pleads invalidity and noninfringement, and also pleads prior publication and prior public use. The lower court sustained the validity of the patent and found infringement as to certain of the devices used by the defendant, holding that dust collectors in use by the defendant having a cone proportion of between 2.50 and 3.50 to 1, infringed plaintiff's claims 3 and 4, but that defendant's devices in which the cone ratio was more than 3.50 to 1 did not infringe. Both parties have appealed, the defendant claiming that the court erred in holding the patent valid, and the plaintiff claiming that the court erred in limiting his patent to those devices having a cone in which the ratio of the altitude of the cone to the diameter at the base was between 2.50 and 3.50 to 1.

In support of its contention that plaintiff's patent is invalid, defendant urges: (1) His invention or discovery was described in a printed publication prior to plaintiff's discovery thereof; (2) that the invention was in public use and sale for more than two years prior to his application for patent; (3) that it was anticipated by the prior art and lacking in invention over the prior art; (4) that plaintiff has been guilty of laches.

Section 31, title 35, U. S. C. (35 USCA § 31) provides as follows:

"Any person who has invented or discovered any new and useful art, machine, manufacture, or composition of matter, or any new and useful improvements thereof, not known or used by others in this country, before his invention or discovery thereof, and not patented or described in any printed publication in this or any foreign country, before his invention or discovery thereof, or more than two years prior to his application, and not in public use or on sale in this country for more than two years prior to his application, unless the same is proved to have been abandoned, may, upon payment of the fees required by law, and other due proceeding had, obtain a patent therefor."

Prior publications rest upon the same ground as prior patents so far as anticipation is concerned, and no valid patent under the above-quoted statute can be obtained if the invention or device was disclosed in a printed publication, either in this or any foreign country, before the invention or discovery was made. Bone v. Commissioners of

Marion County, 251 U. S. 134, 40 S. Ct. 96, 64 L. Ed. 188; Thacher v. Falmouth (D. C.) 235 F. 151, affirmed (C. C. A. 1) 241 F. 869.

■ To be effective as an anticipation, the printed or public disclosure of the subject of patent must be in such terms as to enable a person skilled in the art of the science to which it pertains to make, construct, and practice the invention without assistance from the patent which it is said to have anticipated.

There was received in evidence a printed publication entitled "Roller Mill and Silo Manual," published in Liverpool, England, in 1901. On page 154 of this publication appears the following description:

"One form of dust collector of the Vortex type, very suitable for coarse dust material, now much in use, is that known under a variety of titles as the 'Cyclone,' 'Climax,' 'Tornado,' 'Whirlwind,' etc. These are generally constructed in the shape of an inverted cone of sheet steel, zinc, terne plate, or wood, with a shallow cylindrical part on the top, in the center of which is an opening for the treated air to escape, and another opening in the side into which the dust-laden air is blown. The dust, impelled by centrifugal action, is supposed to remain close to the inside surface of the cone, and to gradually gravitate towards the bottom outlet at the apex of the cone. Some of these collectors have a second cone or perforated cylinder, etc. inside. Although simple in construction these appliances require attention in order to get good work, and for this purpose should be placed where they may be easily inspected. A series of these cones may be grouped either vertically or horizontally until the required capacity for proper purification of the air has been obtained. This compounding has been carried out successfully in many cases. To suit various special positions the machines are made right and left hand as regards the inlet openings.

"Another method adopted is to place the machine in a dust room, so that the finer dust may be collected there, or to pass it through a textile collector from which the air may flow into the atmosphere.

"A Vortex machine of this class about 4 feet diameter by 10 feet high has a capacity for treating 1,500 cubic feet of air per minute, and one of 6 feet by 14 feet high about 2,000 cubic feet per minute."

Defendant produced at the trial a diagram or drawing based upon this publication. It is quite unnecessary to refer to the testimony showing that this diagram, appearing as defendant's Exhibit 17, was properly deducible by one skilled in the art from the above-quoted article, because the court specifically finds that:

"There was undisputed testimony on behalf of defendant, that the drawing, Defendant's Exhibit No. 17, correctly represents a centrifugal or Vortex type dust collector described on page 154 of 'The Roller Mill and Silo Manual', Defendant's Exhibit 29."

We here insert for purpose of convenient comparison an outline drawing of Figure 1 of plaintiff's patent, and an outline of Exhibit 17, based on the above-quoted publication of 1901.

Chart 3.

Outline of Fig. 1    Outline of Def. Ex. 17
Bobbitt Patent      Based on 1901
Publication

Plaintiff, testifying on his own behalf, on being shown copy of the diagram produced from the "Roller Mill and Silo Manual," testified:

"I would consider defendant's Exhibit 17 an infringement. I consider this a long cone collector. This probably would come under my invention."

■ If the device as disclosed by this publication would, if produced after plaintiff received his patent, be an infringement, then it would seem that its earlier disclosure would be an anticipation. Knapp v. Morss, 150 U. S. 221, 14 S. Ct. 81, 37 L. Ed. 1059; Peters v. Active Manufacturing Co., 129 U. S. 530, 9 S. Ct. 389, 32 L. Ed. 738.

The publication describes a Vortex type of dust collector, which is the type of col-

lector described in the patent. It appears from the evidence without dispute that it required only mechanical skill of one skilled in the art to construct the device from the disclosure in the publication, and taking plaintiff's own testimony, it seems clearly established that his invention was described in this publication some thirteen years before he applied for patent.

The above-quoted statute limits the inventions for which a patent may be obtained to those "not in public use or on sale in this country for more than two years prior to his application." Twyman v. Radiant Glass Co. (C. C. A. 8) 56 F.(2d) 119; Brush v. Condit, 132 U. S. 39, 10 S. Ct. 1, 33 L. Ed. 251; Smith & Griggs Mfg. Co. v. Sprague, 123 U. S. 249, 8 S. Ct. 122, 31 L. Ed. 141.

Plaintiff applied for patent on November 27, 1914. Prior to that time there had confessedly been installed certain of these devices. The first was installed by plaintiff in an alfalfa mill operated by himself and his brother at Valley Center, Kan., in 1908, and it is admitted by plaintiff that the dust collector there installed embodied his invention. It was in regular operation in this mill for a period of two months and until the mill failed and was shut down. But it is claimed, and the court found, that it was at that time in an experimental stage. It appears from plaintiff's testimony that this dust collector was built for him by a tinsmith in Wichita, Kan., from drawings submitted by plaintiff, and was transported from Wichita to Valley Center by a man named Whitelock. So that both the tinsmith and the man who transported it knew about the collector, and there is nothing in the record warranting the conclusion that there was any secrecy either about the making, transporting, installing, or maintenance and operation of this device. While it was in use in the mill, it was seen by at least three individuals besides the plaintiff, the tinsmith, and Mr. Whitelock, and none of these observers were pledged to secrecy.

In Corona Cord Tire Co. v. Dovan Chemical Corporation, 276 U. S. 358, 48 S. Ct. 380, 387, 72 L. Ed. 610, it is said by Chief Justice Taft that:

"A process is reduced to practice when it is successfully performed. A machine is reduced to practice when it is assembled, adjusted and used. A manufacture is reduced to practice when it is completely manufactured. A composition of matter is reduced to practice when it is completely composed. * * *

"It is a mistake to assume that reduction to use must necessarily be a commercial use."

See, also, Consolidated Fruit Jar Co. v. Wright, 94 U. S. 92, 24 L. Ed. 68; Pitts v. Hall, Fed. Cas. No. 11,192, 2 Blatchf. 235; Hall v. Macneale, 107 U. S. 90, 2 S. Ct. 73, 27 L. Ed. 367; Egbert v. Lippmann, 104 U. S. 333, 26 L. Ed. 755; Allinson Mfg. Co. v. Ideal Filter Co. (C. C. A. 8) 21 F.(2d) 22.

The plaintiff testified that the use was experimental, but there is nothing in the evidence to show that after the collector was installed any experiments were made as to the cone ratio. It was operated until the mill shut down. The only part of the mechanism about which there was any experiment whatever was the size of the fan, but that was a part of the mechanism not claimed to be covered by plaintiff's invention. The mere circumstance that he connected this Vortex contrivance with a fan either too large or too small is quite immaterial. He conducted no experiments whatever with reference to the sole matter covered by the patent, to wit, the proportion of the height to the diameter of the dust collector; and it appears that plaintiff in constructing the later machine took the measurements from this machine constructed and installed by him in 1908, and adopted them without change or alteration. We are of the view that the experiments were, therefore, immaterial. Swain v. Holyoke Machine Co. (C. C. A. 1) 109 F. 154, 157; Smith & Griggs Mfg. Co. v. Sprague, 123 U. S. 249, 8 S. Ct. 122, 126, 31 L. Ed. 141; Lettelier v. Mann (C. C.) 91 F. 917; Wendell v. American Laundry Machinery Co. (D. C.) 239 F. 555, affirmed (C. C. A.) 248 F. 698, 701.

In the last-cited case, the court said:

"The alterations that were made had relation to the adjustment of aprons and the substitution of spring pressure for pneumatic pressure on the rolls, and to other details, which did not change or affect the principle of the organization and operation of the machine as subsequently patented."

It is true that invention is not anticipated by experimental efforts which are abandoned before accomplishing the event achieved by the invention. In the instant case the experiment was successful, and the dust collector as installed in plaintiff's alfalfa mills successfully accomplished what he claims to have accomplished by his patent. Successful use of an art or instrument is not an experimental use, and an invention or discovery is not to be considered as an aban-

doned experiment merely because it was not applied to commercial use. Thomson Spot Welder Co. v. Ford Motor Co. (D. C.) 268 F. 836, affirmed (C. C. A. 6) 281 F. 680, affirmed 265 U. S. 445, 44 S. Ct. 533, 68 L. Ed. 1098; Freydberg Bros. v. Hamburger (D. C.) 17 F.(2d) 300; Ficklen v. Harding (C. C. A. 2) 273 F. 179; Buser v. Novelty Tufting Machine Co. (C. C. A. 6) 151 F. 478; Brush v. Condit, 132 U. S. 39, 10 S. Ct. 1, 33 L. Ed. 251.

Confessedly the Chickasha Milling Company installed a number of these dust collectors in its mills at Chickasha, Okl. The evidence as to the date of installation was practically all oral, and the lower court expressed the view that it was not sufficient to convince beyond a reasonable doubt that the installation was prior to November 27, 1912. We shall not review the evidence as we think the character of the evidence was such as to warrant the court's finding on this question.

■ It also appears that plaintiff sold the Otto Weiss Alfalfa Stock Food Company, of Wichita, Kan., certain of these collectors, but the court was of the view that while the collectors were installed and used more than two years prior to the date of plaintiff's application for patent, the sale was not consummated until early in 1913, and any money paid was for the purpose of aiding Bobbitt in experiments on such collectors. This can hardly be said to be a finding that there was a sale, or that there was not a sale more than two years prior to the date of the application for patent, but is a finding that sale was not consummated until early in the year 1913. This finding or conclusion is vigorously assailed by appellant. The evidence as to the sale and use by this company was taken by deposition, so that the findings of fact of the lower court are not entitled to the same weight which they would have had if the witnesses had testified in open court. Anderson v. Baldwin Law Publishing Co. (C. C. A. 6) 27 F.(2d) 82.

It is admitted that a dust collector of the design covered by plaintiff's patent was installed by plaintiff in the plant of the Otto Weiss Alfalfa Stock Food Company at Wichita, Kan., prior to November 27, 1912. Plaintiff was paid for this and another collector, and there was offered and received in evidence certain check stubs of the Otto Weiss Company, and photostatic copies of these stubs are preserved in the record. Check No. 14647, dated October 22, 1912, for $150, payable to the order of the plain-

tiff, bears the endorsement: "Part payment on dust collector." Check No. 14787, dated November 9, 1912, for $100, was made payable to the order of plaintiff, and check No. 15316, dated December 6, 1912, for $50, was made payable to the plaintiff. Mr. Weiss testified that plaintiff called on him to sell the collectors; that the check stubs are the stubs of the checks delivered to plaintiff in payment for the dust collectors. The last payment was made December 6, 1912, making a total of $300. It seems clear that the transaction was a purchase, and the first check given bore an indorsement indicating that it was for part of the purchase price. The purchase was under guarantee, and clearly, plaintiff received at least $250 of the purchase price before November 27, 1912. Weiss testified:

"I am pretty sure they were installed before November 1, 1912."

Plaintiff testified that two collectors were installed in the Weiss Company plant, but says they were not in practical "commercial operation" until after January, 1913. He admitted that on November 7, 1912, he received a letter of recommendation from the Weiss Company. Plaintiff, however, testified in patent proceedings as follows:

"Q. When was the first machine for the Otto Weiss Company finally installed in practical working operation? A. The last of October or the first of November, 1912."

Similarly he testified in that proceeding:

"Q. I also hand you another letter and ask you to state what it is. A. It is a letter to me from Otto Weiss Alfalfa Stock Food Company, dated November 7, 1912. This was given to me as a recommendation in case I might want to use it.

"Q. You may state if this letter helps you to fix the date of the installation in the plant of the Weiss Mill. A. Yes, sir, just about a month before this letter I installed the dust collectors."

It also appears that on November 25, 1912, plaintiff filed patent application for a device involving the same principle described in his present patent, and in the instant case he testified:

"On November 25, 1912, I considered I had made an invention and had perfected it. I aimed for it to cover the long, slim cone and a short cone with a jacket around it."

■■ We think the clear preponderance of the oral testimony, which is made practically conclusive by the check stubs, shows that two of these dust collectors were sold by the

plaintiff to the Weiss Company prior to November 27, 1912, and he had collected at least $250 of the purchase price before that time. It is, however, here again claimed that the installation or operation of these collectors was in the nature of an experiment, but the evidence shows that they were made upon the same plan, with the same relative dimensions, as the collector installed by plaintiff in his own plant in 1908, and that the only part of the device concerning which there was any experiment was the fan connection. This is indicated by plaintiff's testimony as follows:

"In the mills where I installed my dust collector I couldn't measure the fans and then fit the collector to the fan. At that time I had to learn that myself. It is a fact that I vary the size of the collector, although I did not vary the proportions of the cone to fit the fan, I mean a bigger collector on a bigger fan. The small collector will not work on a big fan. A large collector will work on a small fan if you don't get it too large. In every case we have to fit the collector to the fan. I found out that you have to have so much air. I vary the size of the collector to the air."

It is observed that the experimental work was merely adjusting the fan to the proper size collector. There was no change whatever in the proportions of the cone, but the experiment was entirely foreign to the alleged invention. The sale of these collectors to the Weiss Company was more than two years prior to the date of the application for patent. They were sold under guarantee, and there was no experimenting with the particular part of the contrivance which is the subject matter of plaintiff's patent. In fact, on November 25, 1912, when he filed his application for patent, which he subsequently abandoned, he testified that at that time he considered he had perfected an invention and that, "I aimed for it to cover the long, slim cone and a short cone with a jacket around it." If at that time he had perfected the long cone invention, there was no occasion for him to experiment with the one in the Weiss plant. We cannot escape the conclusion that the evidence requires the finding that plaintiff sold to the Weiss Company these collectors, and received practically all the purchase price thereof more than two years prior to filing his application for patent, and, as said by the Supreme Court in Smith & Griggs Manufacturing Co. v. Sprague, supra:

"A use by the inventor, for the purpose of testing the machine, in order by experiment to devise additional means for perfecting the success of its operation, is admissible; and where, as incident to such use, the product of its operation is disposed of by sale, such profit from its use does not change its character; but where the use is mainly for the purposes of trade and profit, and the experiment is merely incidental to that, the principal and not the incident, must give character to the use."

What is said by the court in Swain v. Holyoke Machine Co., supra, is here apposite.

"As there is found in the Moodus machine the full and perfected invention of Swain, the circumstance that he connected the machine with a feeder and draft pipe of insufficient size is immaterial. If the machine, under the circumstances presented in this case, contained the invention in its finished form, the inventor cannot relieve himself from the consequences which follow by showing that it was installed by him with imperfect connections. This is not the case of an invention which had not reached a state of perfection or completion at the time the sale was made, but it is a case where the inventor intended to sell, and did, with a full knowledge and understanding of his invention, sell, a machine which embodied his whole invention, and then proceeded to set it up in such a way that it would not operate to the best advantage."

This seems to describe the case presented by the evidence in this case, and this conclusion invalidates plaintiff's patent.

It is also urged that plaintiff's patent lacks invention over the prior art. In describing his device in his application for patent, plaintiff said:

"This type of dust collector is well known and in very general use."

But he says that so far as he was aware, such dust collectors were relatively short compared with their width, and he says that he has discovered that the diameter of this type of dust collector may be very greatly reduced, provided the total length of the device is likewise greatly increased. He says:

"I have been unable to ascertain in a scientific way the precise relation which the length should bear to the greater diameter and to obtain the highest efficiency in use; but I have by experiment approximated the solution of this problem and find that the proportion named should be not less than 3 to 1; that is to say, the total height should be at least three times that of the greatest diameter. * * * I have constructed dust

collectors with a greater height relative to the diameter than that stated without observing any material difference in operation."

The lower court, in sustaining claims 3 and 4 of plaintiff's patent, held that such of defendant's collectors as had cones in which the ratio of the altitude of the cone projected to its apex, to the diameter at the base of the cone, was between 2.5 and 3.5 to 1, infringed plaintiff's patent.

For greater clarity and by way of illustration, we here insert diagrams of two of defendant's dust collectors. Under the decision of the court, number 3 does not infringe plaintiff's patent, but number 4 does infringe.

No. 3      No. 4

Ratios      Ratios
Total 2.55 to 1      Total 2.84 to 1
Cone 2.39 to 1      Cone 2.65 to 1

In plaintiff's cross-appeal it is claimed that the principle of a "dead air space," consisting of the formation of a rising current of air within the vortex formed in a dust collector, was discovered by plaintiff as a new principle of operation. This contention, we think, is not sustained by the claims in the patent, and certainly, the principle of the dead air space was old in the art when plaintiff entered the field. It was recognized in the Morse Patent 370,020, in the Hardenburgh Patent 385,263, in the Wardhaugh Patent 470,608, in the Steiner Patent 967,-849, and in the British Patent 2117. In fact, the very recitals in plaintiff's patent concede that this type of dust collector was well known and in very general use before plaintiff applied for his patent. What plaintiff claims to have discovered and to have embodied in his patent had to do with the relative height and diameter of the cone, and nothing else. We have already observed that the long cone was disclosed in the publication "Roller Mill and Silo Manual." It was also disclosed by patents in the prior art, at least by the accompanying diagrams if not by the specific claims. The prior art patents may not have limited nor definitely fixed the relative dimensions of the contrivances, and plaintiff now claims to have . superimposed upon such devices the limitations contained in his patent. For instance, it appears from the evidence that defendant had in use certain dust collectors having longer cones than those claimed in plaintiff's patent and others having shorter cones than those claimed, and it is conceded that these do not infringe plaintiff's patent.

The metal dust collector with a tangential inlet for the dust-laden air, a central outlet at the top for the purified air, and a tapering portion in the shape of a cone, with the dust outlet near its apex, has confessedly been in use for many years, and plaintiff so recognized in his application for patent. The change in the dimensions of the cone effects no functional difference in the operation of the device. Both short and long cone collectors operate upon exactly the same principle. One witness testified that, "My experience has been that the longer they are the better. 4 to 1 is better than 2½ to 1. The 4 to 1 is more efficient than the 3 to 1." Confessedly, no dust collector perfectly separates the dust from the air, and satisfactory results are under certain conditions secured by one size of collector, while under different conditions an entirely different size may secure better results. It appears in the record that plaintiff himself constructed certain collectors for a Mr. Howard, yet these did not embody his ratio of 3 to 1, but they are said to have brought satisfactory results.

There is nothing to indicate that there is any magic or definite scientific principle involved in plaintiff's alleged discovery. Much reliance is placed upon the decision of the Supreme Court in Eibel Process Co. v. Minnesota & Ontario Paper Co., 261 U. S. 45, 43 S. Ct. 322, 329, 67 L. Ed. 523, but it is noted that in that case a wholly different object was attained from that disclosed by the prior art. It is there said:

"Eibel's high or substantial pitch was directed toward a wholly different object from

that of the prior art. He was seeking thereby to remove the disturbance and ripples in the formation of the stock about 10 feet from the discharge, while the slight pitches of the prior art were planned to overcome the dryness in the formed web of the stock at double the distance from the discharge."

In the instant case, however, there is no difference in the principle involved in any of these dust collectors under consideration. The principle is the same in all of them, but it is claimed that some of them get better results than others. A mere change in an existing device which involves only a difference in form, proportions, or degree, and resulting in doing substantially the same thing in the same way by substantially the same means, even though with better results, is not invention. City of St. Louis v. Prendergast (C. C. A. 8) 29 F.(2d) 188, 193; Hinrichs v. Henderson (C. C. A. 8) 32 F.(2d) 655, 657; Edison v. Alsen's American Portland Cement Works (C. C. A. 2) 219 F. 895, 896; Hayes Pump, etc., Co. v. Friend Mfg. Co. (C. C. A. 2) 8 F.(2d) 33; Smith v. Nichols, 21 Wall. 112, 22 L. Ed. 566; Railroad Supply Co. v. Elyria Iron & Steel Co., 244 U. S. 285, 37 S. Ct. 502, 505, 61 L. Ed. 1136; B. F. Goodrich Co. v. Gates Rubber Co. (C. C. A. 10) 54 F.(2d) 580; In re Richter (Cust. & Pat. App.) 53 F.(2d) 525; Keszthelyi v. Doheny Stone Drill Co. (C. C. A. 9) 59 F.(2d) 3.

In City of St. Louis v. Prendergast, supra, this court in an opinion by Judge Booth, reviews many of the authorities on this question. It is there said:

"Viewed in the light of the rules and principles announced in the foregoing cases, we think that the step taken by the patentee as set forth in claim 2 of the patent in suit, in making use of the plates with positioned shoulders, was a mere carrying forward of the thought embodied in the prior art structures of having the plates support each other by some form of jointure along the line of contact between their respective side edges; the step was a mere substitution of one form of jointure for another, both being old and well known in the art. No new device was produced."

In the later case, Hinrichs v. Henderson, supra, the opinion in which was also written by Judge Booth, it is said:

"It must be remembered, however, that it is not every change, even though it constitutes an improvement, that is necessarily patentable. There must be a product or a method which amounts to invention or discovery. The mere carrying forward of an old thought, the mere change in form, proportion, or degree is not sufficient as a general rule to constitute invention."

The rule is stated by the Supreme Court in Railroad Supply Co. v. Elyria Iron & Steel Co., supra, as follows:

"This brings the patents within the principle so often declared that the 'mere carrying forward of the original thought, a change only in form, proportions, or degree, doing the same thing in the same way, by substantially the same means, with better results, is not such an invention as will sustain a patent.'"

In Edison v. Alsen's American Portland Cement Works, supra, there was some change in the dimensions of the device or structure. In the course of the opinion it is said:

"The specification contains seven pages of description, but it is thought that the only important improvement suggested or claimed is the lengthening of the kiln without proportionately increasing its diameter."

In the instant case, plaintiff has lengthened the cone without proportionately increasing its diameter at its base. He has, therefore, slightly changed the form of the device or its proportions. It operates, however, on the same principle as the devices of the prior art. It performs the same thing in the same way with possibly some better results. We conclude that the patent is void for want of invention.

The decree appealed from is, therefore, reversed and the cause remanded with directions to dismiss plaintiff's bill of complaint for want of equity.